67   481
37a  464
37a  516

BALL, *Plaintiff in Error,* v. FAGG.

1. **Louisiana City Charter**: CITY ATTORNEY: MEANING OF THE WORD "MAY."   The charter of the city of Louisiana (Acts 1870, p. 394), creates the office of City Attorney and gives the Mayor power to nominate, and, with the consent of the council, to appoint all city officers not ordered by the act to be otherwise appointed.   Section 10, article 4, declares that the council *may,* by ordinance, provide for the election by the qualified voters of any of the officers named in the act.   *Held,* that the word "may" is here used, not in the sense of "shall," but in its ordinary and proper signification, and left it to the discretion of the council whether the office of City Attorney should be elective or not.

2. **City Ordinances**: THE CITY CLERK'S ATTESTATION of the date of the Mayor's approval of a city ordinance cannot be contradicted by parol evidence.

*Error to Pike Circuit Court.*—HON. GILCHRIST PORTER, Judge.

*D. A. Ball, W. H. Morrow* and *Elijah Robinson* for plaintiff in error cited, *L. & D. R. R. Co. v. Platte Co.,* 42

31

Mo. 171; Dillon Munic. Corp. §§ 61, 62; *Newburgh Turnpike Co. v. Miller*, 5 John. Ch. 113; *Bradley v. West*, 60 Mo. 33; Wag. Stat., 391, § 81; 16 Am. Law Reg. 25; 41 Md. 446.

*W. H. Biggs* and *W. W. Anderson* for defendant in error.

HENRY, J.—In March, 1874, at a regular election for city officers in the city of Louisiana, Daniel A. Ball was elected city attorney, for the term of one year. Before the expiration of his term of office, the city ordinance providing for the election of the city attorney, was repealed by an ordinance which took effect from and after its passage, February 2nd, 1875. In March, 1875, the mayor and council appointed the defendant city attorney, and at the regular election for city officers, held in March, 1875, Ball again received a majority of the votes cast for city attorney, and claims the office by virtue of that election, contending that the city charter required the election of that officer by the qualified voters of the city, and that the ordinance repealing the ordinance providing for an election was, therefore, a nullity; and also that if the council had the power, by ordinance, to repeal the ordinance providing for the election, yet the ordinance passed March, 1875, was not, in fact, approved or passed until a month after the election, and after it purports to have been passed. On the trial, the plaintiff offered to prove that the ordinance was neither approved by the mayor nor attested by the clerk, until after the regular election in March, 1875, but defendant objected, and the court sustained the objection. The said repealing ordinance was introduced in evidence, and purported to have been passed February 2nd, 1875, and the defendant Fagg was appointed and commissioned March 16th, 1875. Sec. 1, Art. 4, of the original charter of the city, approved March 10th, 1849, declared that the chief executive officer should be a mayor, to be elected by

the qualified voters of the city. Sec. 6 gave to the mayor the power to nominate, and, with the consent of the city council, to appoint all city officers, not ordered by said act to be otherwise appointed. Sec. 9 provided that there should be a clerk, a city treasurer, city constable, city attorney and city engineer, and that such officers should be removable at the pleasure of the city council, by a majority of two-thirds of the council. By Sec. 10 it was provided as follows: " The city council may, by ordinance, provide for the election, by the qualified voters of the city, of any of the officers named in the act." Sections 1, 6, 9 and 10, of Art. 4, of " an act to amend and reduce into one, the several acts incorporating the town of Louisiana," and approved March 12th, 1870, are substantially the same as the corresponding sections of article 4, of the act of 1849.

We are at a loss to undersand upon what principle it is claimed that either the original or amended charter, re-

1. LOUISIANA CITY CHARTER: city attorney: meaning of the word "may." quired the city council to provide for the election of a city attorney by the qualified voters of the city. The word " may," when the power concerns the public intest and the rights of third persons who have a claim *de jure* that the power shall be exercised in this manner (that is, in the manner in which the statute says it " may " be exercised) for the sake of justice and the public good, is construed to mean "shall," but of course, only when the statute will admit of that construction. If the Legislature clearly used the word " may " in its proper and ordinary signification, and the general scope and meaning of the act forbids any other interpretation, the courts are not at liberty arbitrarily to disregard the legislative intent, otherwise, the courts would be makers as well as expounders of law. By the 6th section of the charter the power was expressly given to the Mayor to nominate, and with the consent of the city council, to appoint all city officers not ordered by the act to be otherwise appointed, and the 10th section, declaring that

the city council " may " provide for the election of such officers, certainly left it to the discretion of the city council whether the office should be elective or not. The power given to the Mayor by the 6th section, forbids the interpretation of the word " may " in the 10th section to mean shall.

The passage of an ordinance making the office elective, was at the option of the council, as was also the repeal of the ordinance making it elective, but plaintiff proposed to prove, by parol evidence, that the repealing ordinance was not passed by the council. There is a great diversity of opinion on the question, whether the courts can go behind the formal attestation, and admit evidence to show that the requirements of the constitution were not complied with in passing the law. In this respect the same principles are applicable to the ordinances of municipal corporations, because the mischiefs which would result from permitting an ordinance of a city to be thus attacked, are the same in kind, although not in degree, as those which would follow from allowing acts of the Legislature to be thus overthrown. The weight of authority is against the admission of that kind of evidence to invalidate an act of the Legislature. In some of the States, journals of the proceedings of the Legislature, made and kept by authority of law, are held admissible to impeach an act of the General Assembly, valid upon its face. *Mile v. Sterns,* 3 Barb. 41; *State v. Platt,* 2 S. C. 150; *Jones v. Hutchinson,* 43 Ala. 722; *People v. De Wolf,* 62 Ill. 255. In the *Pacific R. R. Co. v. The Governor,* 23 Mo. 353, this court held otherwise, Leonard, J., dissenting.

The principle of that decision would exclude as evidence, even the record of the proceedings of the city council, to show that an ordinance, valid upon its face, was not legally passed, or was passed and approved prior or subsequent to the date of its attestation.

This evidence, however, was not offered in this case,

*Marginal note:* 2. CITY ORDINANCES: the city clerk's attestation.

but the plaintiff relied alone upon the testimony of witnesses to prove the invalidating fact. The judgment of the circuit court was for the defendant, and it is affirmed. All concur.

AFFIRMED.