## LEWIS H. COX, Appellant, v. WILLIAM MIGNERY & COMPANY, Respondents.

### Kansas City Court of Appeals, November 4, 1907.

1. **MUNICIPAL CORPORATIONS: Taxbills: Jurisdiction: Passage of Ordinance: Property-Owner's Rights.** The fact that a property-owner knew of a jurisdictional defect in the passage of an ordinance for the improvement of a street and did not thereafter, by proper legal proceedings, interfere with the letting of the contract or the doing of the work, will not estop him to maintain a bill in equity against the contractor to have the bills set aside after their issue.

2. **————: Passage of Ordinance: Presumption: Council Journal: Evidence.** Prior to the case of State ex rel. v. Meads, 71 Mo. 266, the rule prevailed in this State that the courts could not go behind the statute roll and admit evidence to show that the requirements of the organic law were ignored in passing a given statute, and the rule was applied to municipal ordinances; but since that time the rule has been otherwise and the journals may be resorted to to determine whether the mandatory requirements in the procedure have been com-complied with; such latter rule, however, does not destroy the presumption of verity which attaches to the enrolled statute, but only removes its conclusiveness, and the burden is still on the proponent of that proposition to show the want of jurisdictional procedure.

3. ———: ———: ———: ———: ———. And the council jour-
nal relied upon to show the want of jurisdictional procedure
should unmistakably disclose that fact, but where there are
mutilations and alterations in regard to matters of vital import-
ance it is not sufficient to impeach the enrolled ordinance.

4. ———: ———: ———: ———: ———: Interlineations. The
rule that interlineations are presumed to have been made be-
fore the approval of the record does not obtain where the
interlineation is in itself suspicious, and no presumption of
good faith can be indulged in such case; and extrinsic evi-
dence is admissible not to contradict the written record, but to
establish it.

5. ———: ———: ———: ———: ———: Case Stated. The
council consisted of nine members. At the meeting one was ab-
sent. On the passage of an ordinance requiring a two-thirds
vote six were recorded in the clerk's blotter as voting for it
and two against it, and it was declared passed. W's vote was
recorded for it; B's vote was recorded against it, when they
should have been vice versa. The deputy clerk copied the mat-
ter into the journal. He afterwards made an interlineation
changing W's vote from the affirmative to the negative and
then sent a copy to the official paper. At the next meeting
the printed record was approved without the councilmen
knowing of the interlineation. *Held*, on the evidence in the
record that the interlineation could be investigated and that
the evidence of the clerk and the councilmen were competent
to establish the original record.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A.
Mosman*, Judge.

AFFIRMED.

*Spencer & Landis* for appellant.

(1) There can be no estoppel as against the prop-
erty-owner for sitting by and seeing a street improved
under void ordinances, when he makes no special com-
plaint to the contractor. Verdin v. St. Louis, 131 Mo.
98; Perkinson v. Hoolan, 182 Mo. 189. (2) An ab-
stract of the council proceedings is required to be pub-
lished in the official paper and the clerk of the council is,
by charter provision, required to keep a record of the

proceedings of the council in a journal kept for that purpose; and the charter also provides that the yeas and nays shall be recorded on the final passage of every ordinance, and that unless they are so entered upon the journal and recorded, the ordinance shall be absolutely void and to no effect. Session Acts, 1903, pages 69 and 71. (3) The suit now pending is a collateral attack upon the passage of the ordinance and not a direct proceeding to annul the ordinance. The authorities in this State distinguish between a direct and collateral attack as follows: "A direct attack is a suit brought directly between the parties originally acting as parties to a judgment, contract, or proceeding." Neither the city clerk, members of the city council, nor the city of St. Joseph, being parties of this proceeding, the action must be indirect, or collateral attack. Truesdail v. McCormick, 126 Mo. 39. After the record is approved by the council it cannot thereafter be impeached collaterally. Mayor v. Davis, 13 So. 331. (4) Pencil writing is not sufficient to make a public record. Stone v. Sprague, 24 N. H. 309; Franklin v. Tilman, 62 Tex. 101; 21 Am. and Eng. Ency. Law (2 Ed.), p. 9; Halleck v. Boydston, 117 Mass. 469; Mayor v. Davis, 13 So. 331. (5) The court can inquire into the votes of the council as shown by the journal required by law to be kept. State v. McBride, 4 Mo. 303; Railway v. Governor, 23 Mo. 367; Bowen v. Railway, 118 Mo. 547. (6) Journal is the only competent evidence to prove the yea and nay vote on the adoption of an ordinance. Parol testimony may be introduced to sustain the record, but not to impeach it. Mayor v. Davis, 13 So. 331; 26 Am. and Eng. Ency. Law (2 Ed.), p. 553, and cases cited in footnotes six and seven; State v. Price, 4 Oh. Cir. Dec. 296; Burke v. Cincinnati, 10 Oh. 542. (7) Interlineations made in the public records are presumed to be made with authority and to be correct. 2 Cyc. p. 242. (8) Records required by law to be kept by clerks of legislative bodies may be

altered or changed before they are read and approved, but after they have been read by the clerk and approved by the legislative body as amended, they cannot, thereafter, either be altered or impeached except by a direct proceeding. Minutes of a meeting are not final until they have been read and approved. Anniston v. Davis, 13 So. 331.

*Fulkerson, Graham & Smith* and *Charles F. Strop* for respondents.

(1) Under the facts certainly appellant is estopped from asserting that the taxbills are invalid. Elliott on Roads and Streets (2 Ed.), sec. 554, pp. 572, 573, 574, sec. 690, p. 614; Jackson v. Smith (Ind.), 22 N. E. 432; Ross v. Stackhouse (Ind.), 16 N. E. 503; 2 Smith on Mun. Corp., sec. 1263, p. 1288; Richie v. South Topeka, 38 Kas. 368, 16 Pac. 332; Murphy v. Insurance Co., 61 Mo. App. 323; Hampton v. Mayor, 36 N. J. L. 159; Youngster v. Mayor, 40 N. J. L. 244; City v. Gilbert, 31 Iowa 356; Bidwell v. Pittsburg, 85 Pa. St. 412; State v. Railway, 74 Mo. 163; Galbreath v. Newton, 30 Mo. App. 380, l. c. 398; Herman on Estoppel and Res Judicata (2 Ed.), sec. 1221, sec. 943, p. 1069; Barker v. Omaha (Neb.), 20 N. W. 382; Tone v. Columbus (Ohio), 48 Am. Rep. 446, 39 Ohio St. 281; Nowlen v. Benton Harbor (Mich.), 96 N. W. 450; State ex rel. v. Mayor (Wis.), 77 N. W. 169; Treat v. Chicago (Ill.), 130 Fed. 444; Farr v. Detroit (Mich.), 99 N. W. 20; Towne v. City Council (Mass.), 43 N. E. 1033; O'Dea v. Mitchell (Cal.), 77 Pac. 1021; Wilson v. Salem (Ore.), 34 Pac. 12; Clinton v. Portland (Ore.), 38 Pac. 410; Ritchie v. South Topeka (Kan.), 16 Pac. 334; Shambaugh v. Current (Iowa), 82 N. W. 497; Heman v. Ring, 85 Mo. App. 235, 236; Huling v. Stone Co., 87 Mo. App. 361; Jaisks v. Merrill, (Mo.), 98 S. W. 758; Johnson v. Duer, 115 Mo. 378. (2) But appellant insists that the doctrine of estoppel does not apply, notwithstanding his complete knowledge of

the facts, because he did not know the law, his ignorance of the law will not excuse him. Herman on Estoppel and Res Judicata, sec. 943 p. 1069; Elliott on Roads and Streets (2 Ed.), sec. 590, p. 614. (3) Every presumption that can fairly be raised in favor of the validity of the taxbills after the work has been completed, should be invoked. Johnson v. Duer, 115 Mo. 366. (4) Jurisdiction to pave its streets exist by virtue of the charter of St. Joseph, that is jurisdiction of the subject matter, and when such exists, parties may waive even constitutional requirements. Elliott on Roads and Streets, sec. 591, p. 616. (5) The law presumes that the ordinance was properly passed and the taxbills valid, the burden is on appellant to show the taxbills void. State v. Ray, 109 Mo. 594; State ex rel. v. Mason, 155 Mo. 496; Bank v. Woester, 147 Mo. 467. (6) The ordinance received six votes and the recording of the yeas and nays on the ordinance, if in fact the recording is required by charter, was at most only directory. St. Louis v. Foster, 52 Mo. 513. One part of the record may be aided or impeached by another part. Jester v. Spurgeon, 27 Mo. App. 479. (7) It has been held that where the ordinance recites that it has passed by a two-thirds vote, then such finding is conclusive. In this case the certificate of the president of the council recites that the ordinance was "passed." Thus certifying that it received the necessary two-thirds vote, and such recital is conclusive, and the question whether the yeas and nays were taken and recorded could be raised if at all only by a direct attack and appellant insists that this is a collateral attack. Railway v. Crown Point (Ind.), 50 N. E. 747; Elliott on Roads and Streets, sec. 594, p. 621; Brewster v. Davenport, 1 N. W. 738. (8) The ordinance under the seal of the city, certified as "passed" by the president of the council and city clerk and approved by the mayor, cannot be impeached, by showing that statutory require-

ments are not complied with. Railway v. Governor, 23 Mo. 353; Ex parte Bedall, 20 Mo. App. 129; St. Louis v. Gleason, 93 Mo. 37; Ball v. Fagg, 67 Mo. 484; Field v. Clark, 143 U. S. 672, 12 Sup. Ct. 495; McQuillin, Mun. Ord., sec. 396, p. 600; Striker v. Kelley (7 Hill N. Y.), 2 Denio 323; Eichenlaub v. St. Joseph, 113 Mo. 407; Bowen v. Railway, 118 Mo. 547; R. S. 1899, sec. 5221. (9)   In the absence of contrary evidence it will be presumed that the requisite number of councilmen voted for the bill, and this presumption is sustained by the evidence.   State ex rel. v. St. Louis, 174 Mo. 136; State ex rel. v. St. Louis, 169 Mo. 37.   (10)   If any record is competent and especially any record other than the "minute book" kept by the City Clerk Beach, as the proceedings were had, it is the typewritten record at page 508 of Book 18, as prepared by Deputy McDonald over the city clerk's signature, before the unauthorized change by witness Campbell, and not the record entry as changed, erased and interlined, and the approval of the record at a subsequent meeting as printed, the testimony showing that the record was in fact not read over, and also showing that the councilmen seldom read the newspaper report of the proceedings, certainly could not validate these unauthorized changes, the approval added no such solemnity as to preclude correction by the chancellor.   2 Am. & Eng. Ency. Law   (2 Ed.), 275, 279; Cox v. Palmer, 3 Fed. 16; Dyer v. Brogan (Calif.), 11 Pac. 589; Yesler v. Seattle (Wash.), 25 Pac. 1014; Dillon on Mun. Corp. (4 Ed.), secs. 297-300; Clark v. Sires (Mo.), 92 S. W. 224.   (11)   The change by witness Campbell being unauthorized, could not affect the record as written up by Deputy McDonald, but that record should stand, and the interlineations and changes be disregarded.   Parol evidence was competent to show which was the record. Yester v. Seattle, 25 Pac. 1014; Dyer v. Brogan, supra; 24 Am. & Eng. Ency. 198; Palmer v. Emery, 91 Ill. 207;

State ex rel. v. Alexander, 77 N. W. 841; State v. Mason, 9 So. 782; 2 Smith M'od. Mun. Corp. sec. 1370, p. 1426; White v. State, 69 Ind. 273. (12) Where the record shows the ordinance "passed," the law presumes the required majority, and testimony of the city officials is competent to sustain this presumption. Brewster v. Davenport (Iowa), 1 N. W. 738. (13) The interlined, changed and erased record was not competent, the chancellor was warranted in not relying upon it. Cox v. Palmer supra.

JOHNSON, J.—This is a proceeding in equity to cancel certain special taxbills issued against the property of plaintiff by the City of St. Joseph, a city of the second class. After hearing the evidence, the trial court found the issues in favor of defendants and dismissed the petition. The taxbills which gave rise to this controversy were a part of those issued by the city to pay for the cost of "repairing and paving the roadway, constructing sidewalks, curbing and guttering on Twentieth street from the south line of Frederick avenue to the north line of Mulberry street in said city." Plaintiff was quite active in opposing the passage of the ordinance which provided for the doing of the work. He was present when the ordinance was passed and, if it is invalid because of the jurisdictional defect in its passage claimed by plaintiff, he knew of that defect but refrained from taking any steps in court to prevent the doing of the work, and did not bring the present action until after the improvement had been completed and his property had received its share of benefit therefrom.

Defendants argue from this fact that plaintiff has no standing in a court of equity since he will not be permitted to preserve silence while his property is being benefited under an ordinance which he knows to be invalid, and then to bring forth the invalidity as a ground for the cancellation of the assessment levied against his

property.    Respectable authority may be found sustaining the principle invoked even in cases where the defect is more than a mere irregularity, but in this state, it has been held on several occasions that the principle does not apply where the work is being done under a void ordinance, i. e., one passed without due observance of all the precedent conditions required by statute.    The persons whose property is to be assessed to pay for the proposed improvement have no more control over the streets than any other persons, nor can it be said that the contractor is induced by their non-action to proceed with the work, and there is no reason for requiring them to invoke the interposition of the courts before the work is done in order to escape a liability which has no foundation in law.    [Verdin v. City of St. Louis, 131 Mo. 1. c. 98; Keane v. Klausman, 21 Mo. App. 485; Perkinson v. Hoolan, 182 Mo. 189.]    In the case before us, the specific ground of attack is that the ordinance was not valid because it failed to receive the votes of two-thirds of the members-elect of the council, the number requisite to its passage under the statute then in force. [Laws of 1903, section 8, p. 63.]    This, if it existed, was a jurisdictional defect and not a mere irregularity; hence the principle under consideration, for the reasons we have shown, could have no application.

The question, the solution of which decides the case, is whether or not the ordinance authorizing the work, when put on its passage, received the votes of two-thirds of the members-elect.    The council, at the time, was composed of nine members, one of whom was absent. The clerk was present and recorded in his minute book the vote of each member at the time of its announcement.    That record shows that six members voted for the ordinance and two against it.    Alderman Whalen's vote was recorded aye, and that of Alderman Bruce no. Next day, a deputy clerk, using the minute book as a guide, wrote a record of the proceedings in the journal.

He used a typewriter for this purpose and the record he prepared relating to the ordinance in question coincided with what appeared in the minute book, i. e., it showed six votes for the ordinance and two against it. A copy of the journal entry then was published in the official newspaper, but before this was done, the deputy clerk, with pen and ink, erased the name of Whalen from among the members who voted aye, and inserted it among those who voted no, and changed the totals to show five votes for the ordinance and three against it. These alterations were made on the journal and the copy printed in the newspaper was of the altered record. At the next meeting of the council, the minutes of the preceding meeting were approved *as printed*. The ordinance, regarded by all the members as having been passed, was duly signed by the president of the council and afterward by the mayor, after which the contract was let. The work was properly done and the taxbills duly issued.

Parol evidence was introduced by each party and, from it, the facts clearly appear that Whalen voted against the ordinance while Bruce voted for it. Undoubtedly, a mistake was made by the clerk in the recording of these two votes. The deputy who wrote the journal record and afterward altered it, testified that the alterations were in his handwriting but that he had no recollection of the occurrence and did not know why he made the change. He was quite positive, however, that he would not have made it except under orders from the clerk. To avoid a continuance of the cause, it was agreed by the parties that the clerk, if present, would testify that he did not instruct his deputy to change the record and did not know that it had been changed. Further, it appears that it was the custom of the council to treat the approval of the minutes of preceding meetings as a matter of form and that, on this particular occasion, the aldermen had no knowledge of the change made in

the record of their votes when they approved the minutes.

It is the contention of plaintiff that the journal record thus approved must be accepted as conclusive of the fact that the ordinance failed to receive two-thirds of the votes of the members elect and that its verity cannot be impeached by extrinsic evidence even in a direct, much less in a collateral proceeding. It is conceded that all the requirements of the statute had been fully performed and, therefore, that the council had jurisdiction to pass the ordinance. It must be conceded, further, that the provisions of the charter that an ordinance of this character must receive a two-thirds majority in order to carry is mandatory, and that if the ordinance in question did not receive such majority, the council had no authority to declare it passed. And, had the fact been established, that the ordinance did not receive the required number of votes, we would encounter no difficulty in coming to the conclusion that the ordinance and tax bills issued under it are void and may be successfully attacked by plaintiff in the present form of proceeding. If the jurisdictional defect asserted by plaintiff related to the proceedings to be had before the ordinance could be put on its passage, the case would fall under the rule followed by the St. Louis Court of Appeals in Fruin-Bambrick Const. Co. v. Geist, 37 Mo. App. 509, and there could be no doubt that the initial presumption that the ordinance was passed in conformity to law could be overturned by proof of the existence of a jurisdictional defect and that such proof could be made by evidence extrinsic to the record kept by the council as well as by the recitals of the record itself. But in the present case, the ground of invalidity arose out of the proceedings in the council relating to the passage of the ordinance, and our first consideration must deal with the question of the character of evidence by which the fact that the ordinance was passed in strict conformity to

the mandatory provisions of the charter may be proved or disproved.

The common councils of municipal corporations generally are regarded as miniature legislative bodies and their ordinances are entitled to the presumptions indulged with respect to statutes enacted by the State legislature. [Ball v. Fagg, 67 Mo. 481.] And it is a well-settled principle that parol evidence will not be admitted to impeach legislative records. There is great diversity of opinion on the question of whether courts can go behind the statute roll and admit evidence to show that the requirements of the organic law were ignored in passing a given statute. The authorities quite generally agree that the testimony of witnesses should not be received to contradict the record and it has been held in many jurisdictions and, for a time in this State, that even legislative records should not be admitted to impeach the attested statute. The main reason underlying this principle is that, since the legislative, judicial and executive departments of government are co-ordinate, each is supreme while acting within the sphere of its prescribed jurisdiction, and it would be an invasion of the province of the Legislature for the judicial department to assert the right to go behind the attestation of the legislative officers that a certain act had been performed in accordance with the requirements of the organic law, by admitting and acting on evidence which tended to show that, in fact, the attestation was false. The principle was ably and exhaustively discussed by Judge SCOTT in Pacific Railroad v. The Governor, 23 Mo. 353, where it was held that courts have no power to look "behind the statute roll in order to determine whether in passing a law the members of the Legislature conformed their conduct to the rules directed by the Constitution to be observed in framing laws," and accordingly, it was further held that the journals of the houses of the Legislature were not competent evidence

to impeach the statute roll which was declared to be "a record of so high nature that it imports absolute verity and cannot be contradicted."

It will be found that this principle which, to the writer appears to be founded on unanswerable logic, is supported by the weight of authority in other jurisdictions. [2 Wigmore on Evidence, section 1350 and cases cited in notes.] Later, it was re-announced by the Supreme Court in Ball v. Fagg, supra, and applied to ordinances enacted by municipal corporations. In citing with approval the case of Pacific Railway v. The Governor, supra, it was there observed "the principle of that decision would exclude as evidence even the record of the proceedings of the city council to show that an ordinance, valid upon its face, was not legally passed, or was passed and approved prior or subsequent to the date of its attestation."

But in State ex rel. v. Mead, 71 Mo. 266, the Supreme Court, in effect, overruled the prior decisions to which we have referred and held that the legislative journals, in proper circumstances, might be received in order to show that the law had not been passed in accordance with constitutional requirements. It was said: "The great current of authority is certainly in favor of such evidence for such a purpose, and that the journals may disclose such a state of facts as will warrant the courts in holding a statute void. We have no question but that this view is the correct one. Taking this, then, as the starting point, let us see if, upon examination, the journals will support or overthrow the statute. In order satisfactorily to determine this, it first becomes necessary to inquire whether section 37 is mandatory or directory, for if the latter, the omission of the journals, in certain particulars, would not be a fatal one."

The justification offered for this apparent assertion of the right to supervise, in a measure, the acts of a co-ordinate branch of government was that "with the

advance toward a higher civilization, greater precautions were requisite in legislative matters than in the early days of our state's history." In State ex rel. v. Field, 119 Mo. 593, the Supreme Court assumed, as a matter of course, the correctness of the rule permitting courts to examine legislative journal entries to ascertain whether or not a given act was passed in conformity with the requirements of law, and as we are not advised of any subsequent ruling holding to the contrary doctrine, we must treat the question as settled that the records preserved by the houses of the Legislature which contain a history of the proceedings culminating in the enactment of a statute may be admitted in evidence for the purpose of proving or disproving the fact that the mandatory requirements of the organic law were fully satisfied.

This doctrine, however, even when carried to its fullest extent, does not destroy the presumption of verity which attaches to the enrolled statute. It goes no further than to remove the conclusiveness of that presumption. When the enrolled statute discloses on its face no ground of invalidity, the presumption that it was enacted in accordance with the requirements of law is very strong and may be overcome only by legislative records which clearly show the fact to be otherwise and the burden always is on the proponent of the proposition that the statute is invalid to adduce conclusive proof of that fact.

Assuming for present purposes, without so holding, that ordinances of a municipal corporation relating to the improvement of public streets and the assessment of the cost thereof against the abutting landowners should be treated as legislative enactments and, therefore, controlled by the rules we have just discussed, we come to the question of whether or not plaintiff has successfully supported his attack on the validity of the ordinance in question.

The argument that defendants, in the attack they have made on the altered journal record relied on by plaintiff, are endeavoring to impeach the verity of the highest record in a collateral proceeding, manifestly is untenable. Defendants are standing on the official record, the attested ordinance, and since it does not show on its face that it was not passed by the required two-thirds vote, we start out with the presumption that it was passed in accordance with the requirements of the mandatory provisions of the charter. Without any further showing, plaintiff must fail in his action. The burden is on him to disclose a ground of invalidity which will rebut the initial presumption. This he attempts to do by producing the journal record of the meeting at which the ordinance came up for passage. Had that record unmistakably disclosed the fact that the ordinance had received the votes of less than two-thirds of the members elect, we would hold that plaintiff had adduced evidence of character strong enough to overcome the presumption of validity. But plaintiff did not produce a record unmistakably correct on its face, but one which showed that it had been mutilated and altered with respect to a matter of most vital importance. With nothing but the journal before him, a person could entertain no other conclusion than that when the entry was first made, its recitals showed that the ordinance had received six affirmative votes and then that someone had altered it to show that the ordinance had received only five votes and, therefore, had not been lawfully passed.

The general rule is that where a written instrument, whether it be a private contract or a public record, is interlined, the alteration is presumed to be bona fide and to have been made before the contract was executed or the record approved, and the burden, in such cases, is on the party attacking the instrument to show that it was altered after execution or approval. But this rule

does not obtain where the interlineation is, in itself, suspicious. If it appear to be contrary to the probable meaning of the instrument as it stood before its insertion, or, if it be in different writing from the body of the instrument, or if it destroy the legality of the instrument, or as in the case before us, the validity of the legislative act, no presumption of good faith should be indulged, and the burden should be cast on the party who relies on the interlineation to show that it was made before the execution of the contract or the approval of the public record. In such cases, extrinsic evidence is admissible, not on the theory that it may be used to impeach or contradict a written instrument or record, but that it may be used to establish the actual record. [Yessler v. Seattle, 25 Pac. 1014; Cox v. Palmer, 3 Fed. 16; Dyer v. Brogan, 11 Pac. 589; 24 Am. and Eng. Ency. of Law (2 Ed.), 198; Palmer v. Emery, 91 Ill. 207; State ex rel. v. Alexander, 77 N. W. 841; State v. Mason, 9 So. 776.]

The door being opened to the admission of evidence *aliunde*, no reason exists for excluding any evidence, whether it consists of the testimony of witnesses or of other records and memoranda which directly tend to establish the actual fact. The minute book kept by the clerk in which he made pencil entries of proceedings as they occurred was properly received in evidence. It showed that the ordinance received six votes, though it contained an error which, in all likelihood, gave rise to this controversy. The testimony of the clerk, his deputy, and that of members of the council likewise was admissible, and it established beyond dispute, the following facts: *First,* that the alteration was made by the deputy without authority and, we think, without the knowledge of the clerk. *Second,* that when the council formally approved the minutes of the preceding meeting, no one knew that the record had been altered. *Third,* that the alteration, while not false as to the fact uttered,

spoke but half the truth, since it failed to show that Bruce cast an affirmative vote. It, therefore, clearly appears by what must be held to be competent evidence, under the peculiar circumstances before us, that the ordinance, in fact, received the required number of votes, and this being true, the attack on its validity should not be sustained.

Accordingly the judgment is affirmed. All concur.