### IN RE JOHN E. CORVEY, PETITIONER.*

St. Louis Court of Appeals.	Opinion filed November 2, 1926.

**1.—Municipal Corporations—City of St. Louis—Charter—Ordinances—Approval—Mistake in Date—Does Not Defeat Ordinance.** Under section 17, article 4 of the charter of the city of St. Louis relating to the approval or returning of ordinances by the mayor, a recital of the date of the mayor's approval of an ordinance as of January 23, 1925, instead of the obviously correct date of January 23, 1926, **held** not to defeat the ordinance whether given the effect of an affirmative approval, or being returned without any action of the mayor upon it, as the charter nowhere requires that the mayor shall give the date of his approval of an ordinance.

**2.—Same—Ordinances—Violation—Prosecutions.** A prosecution for a violation of a city ordinance is not a criminal action, but is a civil one; sometimes termed "quasi" civil.

**3.—Same—Information—Sufficiency.** In a prosecution for the violation of a city ordinance, where the sufficiency of the information is challenged, the information is to be regarded by the same rules as are applicable in other civil cases, and, measuring the sufficiency of the information by that rule, **held** it was sufficient.

**4.—Habeas Corpus—Courts of Appeals—Constitutional Law—Jurisdiction.** Courts of Appeals have jurisdiction in a **habeas corpus** proceeding to determine the petitioner's rights regardless of the constitutional jurisdiction of such courts.

**5.—Automobiles—Parking—Ordinances—Validity.** A city ordinance forbidding parking of vehicles in certain districts in the city bounded by named streets **held** not invalid as attempting to regulate parking on private property in view of a general and comprehensive ordinance defining parking.

**6.—Same—Same—Parking Defined.** The term "parking," when applied to traffic of automobiles or vehicles, means to permit such vehicles to remain standing on a public highway or street.

**7.—Ordinances—Parking—Validity—Presumption.** It will not be presumed that the lawmakers of the city of St. Louis, in enacting a parking ordinance, were ignorant of the fact that they could not regulate the parking of automobiles in private or public garages or on private property and, even if there was any doubt on the question, such doubt must be resolved in favor of the validity of such legislative act.

---

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, p. 790, n. 3; p. 795, n. 30; Evidence, 22CJ, p. 139, n. 28; Habeas Corpus, 29CJ, p. 35, n. 48; p. 37, n. 62; Motor Vehicles, 28Cyc, p. 36, n. 13 New; Municipal Corporations, 28Cyc, p. 356, n. 81 New; p. 376, n. 68 New; p. 389, n. 11; p. 782, n. 86; p. 795, n. 74; Parking, 29Cyc, p. 1685, n. 52 New.

*Habeas Corpus.*    Original Proceeding.

PETITIONER REMANDED.

*John E. Corvey, pro se,* and *Abbott, Fauntleroy, Cullen* and *Edwards* for petitioner.

*Julius T. Muench* and *George J. Fettge* for respondent.

DAUES, P. J.—Proceedings in *habeas corpus.* Petitioner, John E. Corvey, was convicted in the city court of the city of St. Louis of a violation of a parking ordinance of said city. A fine was assessed and upon a refusal to pay the fine, petitioner was committed to the custody of the respondent, William E. Duffy, city marshal. This writ of *habeas corpus* was then sued out for the petitioner's release. Respondent duly filed his return, to which petitioner has demurred.

From the record thus made we have this: Petitioner was arrested on May 15, 1926, and was tried and convicted July 8, 1926, for a violation of Ordinance No. 34554, which forbids the parking of vehicles during specified hours of the day in the district bounded by Carr, Market, Fourth and Twelfth streets in said city of St. Louis, and the ordinance provides a penalty.

Petitioner insists that the ordinance is void because one of the formal requirements in the passage of same has not been complied with, to-wit the approval of the bill during the Mayor's term of office and endorsing the correct date of such approval. The progress of the passage of the bill is regular, at least to the point of approval by the Mayor. The bill was properly passed by the Board of Aldermen January 3, 1926, and on that day same was forwarded to the Mayor for his approval or disapproval. The original bill bears the endorsement that it reached the Mayor's office on the same day that it was transmitted by the Board of Aldermen, and, again, that it was filed with the Register on the same day with the Mayor's approval. However, under the signature of the Mayor setting forth his approval, the date January 23, *1925,* is written instead of the obviously correct date January 23, *1926.* It is conceded that on January 23, 1925, Victor J. Miller was not the Mayor of the city of St. Louis, but was Mayor when he approved the ordinance on January 23, 1926. This error in the year date is the main ground relied upon by petitioner for release from the custody of the respondent.

The Charter of the city of St. Louis, article IV, section 17, is as follows:

"Each bill shall be presented to the Mayor immediately after its adoption, but shall not be acted upon by him (except it be an emerg-

ency measure) within ten days after its adoption. He shall within twenty days after its presentation to him return it with his approval or disapproval endorsed thereon to the Board of Aldermen, or, if said Board shall have finally adjourned, to the Register. Failure so to return any bill within said time shall constitute approval thereof by the Mayor. If the Mayor approves the bill, or fails to return it as soon as and when above provided, it shall become an ordinance, subject to the Referendum provisions of this Charter, etc." (The ordinance before us is an emergency measure.)

Section 21 of article IV of the Charter provides that every ordinance when passed shall be immediately sent to the Register, where same shall be numbered, filed, preserved and published.

We have examined the whole Charter carefully, and nowhere do we find that the Mayor is required to affix the date of his approval of an ordinance. Article IV, section 17 of the Charter plainly provides that a bill acted upon by the Board of Aldermen and forwarded to the Mayor should be sent back to the Board of Aldermen (or Register) either with his approval or disapproval within twenty days, but should he not send it back within such time with his disapproval thereon, "such shall constitute approval thereof by the Mayor." In that event, then the bill becomes effective as an ordinance in the same manner as though it had been approved by him. Obviously, if the Mayor approved this ordinance within the specified time and returned same, it became a law; if he returned same neither approved nor vetoed, it became a law. Axiomatically, if a mistake in writing 1925 instead of 1926 destroys the effect of affirmative approval, then under the Charter the bill not being approved and not vetoed, and so returned, it became an ordinance after twenty days. If we consider the ordinance from the view of its having been given effect by the approval of the Mayor, its validity does not depend upon any recital thereon as to the date of the approval, but depends upon its having been approved and returned within twenty days. The worst that can be said of this mistake in giving the year as 1925 instead of 1926 is that there was no approval at all by the Mayor, but being returned without any action of the Mayor upon it. This leaves us the situation that same became an ordinance under the Charter, notwithstanding. This mistake in date cannot be construed to make the express approval of the Mayor a veto of the ordinance. Furthermore, the ordinance does not depend upon the date of approval; the Charter requires that it shall be signed or vetoed within twenty days. This was done, in that it was sent to the Register with the Mayor's attempted approval at least within that time. And, as we have already said, the Charter nowhere requires that the Mayor shall give the date of his approval.

The petitioner relies upon the case of Ball v. Fagg, 67 Mo. 481, to the effect that the date of the Mayor's approval of an ordinance as

attested by the city clerk cannot be contradicted by parol evidence. That case followed the case of Railroad v. Governor, 23 Mo. 353, which has been overruled in the case of State ex rel. v. Mead, 71 Mo. 266.

While we do not deem this principle of controlling influence here, it may be pointed out that in Cox v. Mignery & Co., 126 Mo. App. 669, 105 S. W. 675, the Kansas City Court of Appeals considered these cases, and also concluded that the Mead case, supra, has over- ruled the prior decision in this particular and there held that under proper circumstances the legislative journals might be reached in order to show that the law had not been passed in accordance with the constitutional requirements.

In State ex rel. v. Drabelle, 261 Mo. 515, 170 S. W. 465, the Supreme Court held that the entries of the journal of the Legislature where the "yea" and "nay" vote was recorded as required by the Constitution show that the bill did not receive the constitutional majority, the journal however containing a recital that it received a majority vote, and so it was held that this recital could not impeach the recorded vote appearing in the journal in obedience to the requirement of the Constitution.

In Ex parte Seward, 299 Mo. 385, 253 S. W. 356, the court distinguished the facts there from the Drabelle case, saying that in the Drabelle case it was ruled that the law may be held invalid where the journal shows affirmatively that the essential constitutional requirements have not been met, holding of course that this did not authorize a resort to oral evidence to contradict the journal and thus show that the steps required to be had but not required to be entered in the journal was not taken.

The case of City of Allentown v. Pennsylvania, 109 Pa. 113, meets an identical attack upon an ordinance passed by the city of Allentown under its Charter (legislative) exactly such as we have here. There the court said:

"The journals taken in connection with the ordinance reveal a mistake in the date of approval, not illegality or irregularity in the procedure. Had the mayor approved without writing any date would the mistake have been fatal? If the date as written be obviously false, is not the effect the same as if none were written? When the ordinance is approved it need not be returned to councils, for upon approval it becomes a law. If neither approved, nor returned to councils with his objections within fifteen days, it shall have force as if approved. Then if the approval be without date, or with a date manifestly untrue, in absence of legal evidence of its true date, why should not the ordinance be deemed in force from the expiration of the fifteen days during which the mayor could hold it under advisement? No presumption could be made that it was subsequently ap-

proved. Where the mistaken date is patent and not prejudicial to any public or private interests, there is no reason why it should destroy the ordinance. The interpretation or construction is unaffected by the erroneous date. The only question that might arise, affecting the city or individuals, is when the ordinance became operative, or took force and effect.''

And as we view the Charter, the bill as returned became a law, even though the date of its approval by the Mayor is erroneous or absent. It would have failed as an ordinance only if we construe the action of the Mayor as a veto, in which event it would have been returned to the legislative branch of the city for its action upon the veto.

The sufficiency of the information is challenged. This is a prosecution for a violation of a city ordinance. It is not a criminal action, but is a civil one, sometimes termed "*quasi*" civil. The information upon which the petitioner was tried and convicted is to be regarded by the same rules as are applicable in other civil cases, and measuring the sufficiency of the information by that rule, it certainly is sufficient.

Petitioner says the ordinance is unreasonable, and thus strikes at the constitutionality of same, Doubt was entertained by this court as late as the case of In re Webers, 200 Mo. App. 29, 197 S. W. 850, as to whether we could make an incursion into new and unplowed constitutional questions, even in a *habeas corpus* case, and because of such doubt we transferred that case to the Supreme Court. When the case came before that tribunal it was held (In re Webers, 275 Mo. 677, 205 S. W. 620), as we understand the case, that this court has jurisdiction in *habeas corpus* proceeding to determine the petitioner's rights regardless of the constitutional jurisdiction of this court. Subsequently, the Springfield Court of Appeals, in Workman v. Turner, 283 S. W. 61, construed the Webers case as we construe it, and that court assumed jurisdiction in a *habeas corpus* case touching the rights of a petitioner who was confined on a felony charge. So it seems that we must consider constitutional questions in a *habeas corpus* proceeding.

The point made is that the ordinance includes private property within its scope, that is to say, that the ordinance on its face forbids the parking of vehicles in certain districts in the city bounded by named streets and does not attempt to regulate such parking exclusively on the public highways or streets of the city within such district. The information, however, charges the petitioner with parking on Market street in the city of St. Louis.

The ordinance forbids the "parking" of vehicles. A general and comprehensive ordinance of the city, ordinance No. 32926, defines the term "parking" as follows: "To stand or store any vehicle on a

public highway at a time when it is not being loaded or unloaded." In addition to that, the term "parking" when applied to the traffic of automobiles or vehicles is well known and understood. It means to permit such vehicle to remain standing on a public highway or street. Furthermore, it cannot be presumed that the lawmakers were ignorant of the fact that they could not regulate the parking of automobiles in private or public garages or on private property. If there is any doubt on the question, such doubt must be resolved in favor of the validity of such legislative act. And we indulge the presumption that the Board of Aldermen did not intend to violate the organic law of the State. We must give life to the intention of the ordinance which is manifest, and that is that the parking was forbidden in the public streets and not in garages or on private property. Such is the rule as declared by our Supreme Court in St. Louis v. Murta, 283 Mo. 77, 222 S. W. 430.

Petitoner has not shown himself entitled to a discharge under our writ, and therefore he should be remanded to the custody of the respondent. It is so ordered. *Becker* and *Nipper, JJ.,* concur.