ELLEN GORMAN, Appellant, v. CHICAGO, BUR-
LINGTON & QUINCY RAILROAD COMPANY
and CITY OF ST. LOUIS.

**Division One, March 3, 1914.**

1. **CITIES: Streets.** The mayor and assembly of St. Louis have been vested with full power to establish, open, vacate, alter, widen, extend, pave, or otherwise improve, all streets, avenues, sidewalks and alleys in the city. This power is full and complete, constituting the city the sole judge of when a street shall be opened or closed for public travel, subject, however, to the constitutional inhibition against taking or damaging private property for public use without just compensation.

Gorman v. Railroad and St. Louis.

2. ———: ———: **Abutting Owner: Right of Access: Taking Private Property.** The right of access from the property to a street is the only right appurtenant to private property which is not included within the broad control conferred upon the city of St. Louis by its charter; the right to travel upon the street in any direction is not a property right such as is protected by the constitutional inhibition against taking or damaging private property for public use without just compensation.

3. ———: ———: ———: **Obstruction in Street.** An owner of abutting property in St. Louis has not the right to abate by injunction an obstruction in the street on which his property fronts, which obstruction is 250 feet from his boundary line, although such obstruction prevent travel on the street in that direction and be a public nuisance.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) Defendant railroad's solid embankment across Aurora avenue, totally obstructing it, is a public nuisance which the city did not and could not authorize. Lackland v. Railroad, 31 Mo. 180; Lockwood v. Railroad, 122 Mo. 86; Knapp, Stout & Co. v. Railroad, 126 Mo. 37; State ex rel. v. Murphy, 134 Mo. 562; Corby v. Railroad, 150 Mo. 457; Sluder v. Transit Co., 189 Mo. 130; State ex rel. v. Railroad, 206 Mo. 261; Morie v. Transit Co., 116 Mo. App. 12; Donner v. Railroad, 133 Mo. App. 527. (2) As plaintiff's property fronts on Aurora avenue and the embankment cuts off access to it along the street from the east she sustains damages different in kind from that of the public at large, and this authorizes her to maintain this suit for an injunction. O'Brien v. Central I. & S. Co., 158 Ind. 218; Vanderburgh v. Minneapolis, 98 Minn. 329; Chicago v. Burckey, 158 Ill. 103; Re Melon Street, 182 Pa. St. 397; Farrar v. Railroad, 101 Mo. App. 140; Hulett v.

Railroad, 80 Mo. App. 90; Lackland v. Railroad, 31 Mo. 180; Heinrich v. St. Louis, 125 Mo. 424; Rude v. St. Louis, 93 Mo. 408; Gates v. Railroad, 111 Mo. 28; Glaesner v. Brewery Assn., 100 Mo. 508; Sheedy v. Brick Works, 25 Mo. App. 527.

· *Douglas W. Robert* for respondent Railroad; *Robert & Robert* of counsel.

A private person cannot maintain an action for the abatement of a public nuisance unless the plaintiff can show that he has suffered damage different in kind, not in degree, from the general public. Fairchild v. City, 97 Mo. 85; Canman v. City, 97 Mo. 92; Rude v. City, 93 Mo. 408; Bailey v. Culver, 84 Mo. 531; Kinealy v. Railroad, 69 Mo. 663.

*William E. Baird* and *Robert Burkham* for respondent City.

An injunction will not issue, under the facts stated in the petition in this case, to restrain a municipal corporation from permitting the maintenance by a third person of a public nuisance upon the highway. Dillon, Municipal Corporations (5 Ed.), secs. 109, 242, 243, 301, 689, 1626, 1627, 1628; High, Injunctions, secs. 587, 593, 1240; Murtaugh v. St. Louis, 44 Mo. 479; Moore v. Cape Girardeau, 103 Mo. 470; Kiley v. Kansas City, 87 Mo. 103; Armstrong v. Brunswick, 79 Mo. 319; Moran v. Car Co., 134 Mo. 641; Harman v. St. Louis, 137 Mo. 494; Butz v. Kavanaugh, 137 Mo. 503; Sallee v. St. Louis, 152 Mo. 615; Loth v. Theatre Co., 197 Mo. 328; Mehan v. St. Louis, 217 Mo. 35; Ryan v. Kansas City, 232 Mo. 471; McCrowell v. Bristol, 5 Lea (Tenn.), 685; James v. Harrodsburg, 85 Ky. 191; Arnold v. Stanford, 113 Ky. 852; McDade v. Chester City, 117 Pa. St. 414.

BROWN, C.—This suit was commenced in the circuit court for the city of St. Louis, December 28, 1909. The amended petition filed January 17, 1910, is, caption and signature omitted, as follows:

"Plaintiff by leave of court files this, her amended petition, and states that the defendant Chicago, Burlington & Quincy Railroad Company is and was at all the times hereinafter mentioned a railroad corporation and the defendant city of St. Louis is a municipal corporation and political subdivision of the State of Missouri; that plaintiff is the widow of Francis Gorman, who died at the city of St. Louis on or about the 7th day of June, 1904, leaving a last will and testament whereby after bequeathing the sum of five dollars to each of his children he devised and bequeathed unto plaintiff all other property, whether real, personal or mixed, which he owned at the time of his death; that at the time of his death the said Francis Gorman was the owner of the tract of ground hereinafter particularly described and under his will plaintiff became and still is the owner thereof and all the debts and bequests mentioned in the will of said Francis Gorman have been paid and his estate duly administered and settled; that subsequent to the dedication of Aurora avenue as hereinafter stated and prior to the construction of the railroad embankment hereafter described the said Francis Gorman for a valuable consideration purchased and thereby became the owner of the tract of ground above referred to and particularly described as being a tract of land situated in United States Survey No. 926, having a front of 660 feet on the south line of Aurora avenue and extending southwardly between parallel lines for a distance of 341 feet 8 inches and thence southwardly to the center line between Aurora avenue and Humboldt avenue on which center line it measures 620 feet, said tract being composed of lots 31 and 32 of that part of the sub-

division entitled Garden Suburb, by John How, which lies east of the Wabash Railroad excepting the triangle off of the southeast corner thereof conveyed by said Francis Gorman to the St. Louis, Keokuk & Northwestern Railroad Company, on or about the 9th day of January, 1892; that at the time that said Francis Gorman became the owner of said tract of ground the same was in St. Louis county but outside of the city of St. Louis; that thereafter about the year 1876, the limits of the said city were extended so as to include within said city the said tract of ground and all of said Garden Suburb; that said Garden Suburb was a subdivision made by one John How, who duly platted same and recorded a plat thereof in the office of the recorder of deeds of St. Louis county, on or about the 24th day of July, 1868, and which is of record in the office of the recorder of deeds of the city of St. Louis in plat book 6, page 22; that in said subdivision divers streets were platted and dedicated as public streets and highways and amongst them was Aurora avenue, which runs in a general eastern and western direction from Broadway, formerly Bellefontaine road, on the west to the Mississippi River on the east and being the only public street upon which plaintiff's said tract of ground fronts, and said Aurora avenue ever since has been and still is a public street and highway; that there is no way of reaching plaintiff's said tract of ground except by passing along Aurora avenue from the east or from the west; that by ordinance No. 15377 of the defendant city of St. Louis, approved December 24, 1889, the St. Louis, Keokuk & Northwestern Railroad Company was authorized by said city to construct, maintain and operate a railroad of standard gauge with a single or double track over, along and across divers streets and alleys in said ordinance mentioned and along a route therein designated and which included the crossing of Aurora avenue at the point

hereinafter stated; that purporting to act in accordance with the terms of said ordinance the said railroad company in 1893 constructed its railroad across Aurora avenue at a point about 250 feet east of the eastern line of plaintiff's said property; that in constructing its said road the said railroad company wrongfully built across said Aurora avenue at the point aforesaid a solid embankment about 30 feet wide on top and with sloping sides and the top of which was and still is about 15 feet above the surface of Aurora avenue; that upon said embankment the said railroad company laid its tracks and operated its trains thereover; that on or about January 1, 1901, said St. Louis, Keokuk & Northwestern Railroad Company sold, conveyed and delivered said railroad and embankment to defendant Chicago, Burlington & Quincy Railroad Company, which has ever since maintained and operated same and still does so; that said embankment entirely obstructs travel along Aurora avenue eastwardly from plaintiff's property and there is no street or highway crossing or leading into Aurora avenue between the western line of plaintiff's property and the said embankment of said railroad company; that by the construction of said embankment across Aurora avenue aforesaid the easement incident to plaintiff's said tract of ground of the right to pass from same eastwardly to the public wharf and the river has been totally destroyed and there is no way of reaching plaintiff's said property by travel along Aurora avenue from any point east of said embankment and thereby plaintiff has been deprived of her property, to wit, said easement, without due process of law, contrary to section 1 of the amendment 14 to the Constitution of the United States and plaintiff's said property has been taken and damaged for public use and without compensation contrary to section 21 of article 2 of the Constitution of Missouri and said embankment so built across Aurora ave-

nue, as aforesaid, is and since its construction always
has been a public nuisance and said railroad company
has been permitted to maintain said public nuisance by
the defendant city of St. Louis, which has never at
any time taken any steps to cause same to be removed
and by the maintenance of said public nuisance plain-
tiff's property has been greatly depreciated in value
and by reason of said nuisance and the location of
said property and of the deprivation by said nuisance
of plaintiff's said easement and right to travel to
and from her said property eastwardly along Au-
rora avenue she has suffered and will suffer damages
different in kind from that suffered by the public at
large by reason of the maintenance of said public nui-
sance and plaintiff states that she has no adequate
remedy at law in the premises.

"Plaintiff therefore prays the court to order, ad-
judge and decree that the said public nuisance be
abated and that the defendant railroad company be
perpetually enjoined from maintaining said solid em-
bankment over Aurora avenue and from maintaining
its tracks across Aurora avenue at the point aforesaid
without providing ample and adequate means for trav-
eling along said avenue in vehicles and on foot east-
wardly to and from plaintiff's property and that the
defendant city of St. Louis be enjoined from further
permitting the said obstruction to be maintained in
Aurora avenue as aforesaid and that plaintiff be
granted such other and further relief in the premises
as shall seem equitable and just."

To this each defendant demurred generally; the
defendant Railroad Company adding the ground that
the cause of action, if any, accrued by the erection com-
plained of which was more than ten years prior to the
filing of the suit and was therefore barred by the Stat-
utes of Limitations. The court sustained the demur-
rers and entered judgment for the defendants.

## OPINION.

The plaintiff is seeking the aid of the court by injunction to abate and prevent the further continuance of a railroad embankment fifteen feet high across Aurora avenue, a platted street in the city of St. Louis. She is the owner, as devisee of her father, who died in January, 1904, of a lot of ground fronting 660 feet on the south side of the street and extending south the same width 341 feet 8 inches, thence to a line half way to Humboldt avenue, the next street south, where it is 620 feet wide. The land was platted in 1868 by the name of Garden Suburb, and the father became the owner between that time and 1876, when it was taken into the city of St. Louis. Aurora avenue with other streets was dedicated on this plat. In 1889, the city of St. Louis, by ordinance, authorized the St. Louis, Keokuk & Northwestern Railroad Company to cross Aurora avenue with a single and double track at a point about 250 feet east of the northeast corner of plaintiff's land. In 1892 plaintiff's father conveyed to that company a triangle off the southeast corner of the land and in 1893 it built its line across Aurora avenue with a 30-foot roadway on an embankment 15 feet high, and it has, with its successor the defendant railroad company, maintained and operated the structure ever since.

*Streets: Obstruction.*

Although there is no charge in the petition that the street in question was ever opened for travel either at the point of the obstruction or opposite to the plaintiff's land, we will assume, for the purpose of this inquiry, that it was at the time of the construction of the railroad, and ever since has been, opened to the use of the public for all the purposes to which an urban highway of that character may be devoted. That the structure complained of, which constitutes an insurmountable obstacle to all ordinary travel along the street at that point, is not such a purpose is evident,

and that it is a public nuisance which may be removed and its further maintenance prevented by a proceeding on the part of the proper public authority follows as a matter of course. The title to all public easements of this character is vested in the State or such municipal corporations or *quasi*-corporations as the Legislature has indicated, in trust for all the people of the State for the purposes to which they have been dedicated or otherwise appropriated, and their control has been delegated to such legislative agents for the purposes of the trust. It is evidently contrary to this policy that it should be exercised by any one or more persons to the exclusion of others. In this case the mayor and assembly of the city of St. Louis have been vested with full power by ordinance to establish, open, vacate, alter, widen, extend, pave, or otherwise improve, and sprinkle, all streets, avenues, sidewalks and alleys in the city. This power is full and complete; constituting the city the sole judge when the street shall be opened or closed for public travel, subject, however, to the constitutional inhibition against taking or damaging private property for public use. [Heinrich v. St. Louis, 125 Mo. 424; Christian v. St. Louis, 127 Mo. 109; Knapp, Stout & Co. v. St. Louis, 153 Mo. 560, 572; Glasgow v. St. Louis, 107 Mo. 198.]

This constitutional provision refers, it will be noted, to the taking and damaging of property and not of any purely personal right. As we have already

**Right of Access.** said, everybody has the personal right to travel along the street. He may exercise it a hundred times each day or once a year and its nature is the same: the exercise of a public right held in trust for him by the State through its constituted legislative agency, which alone has the power to prepare and preserve the street for his use. With this duty he has no authority to interfere. The right protected by the Constitution because it pertains to his property is the right of access to the street or free

passage between his property and the street, so that he may go upon it to exercise his public right of travel, and when he has done so return to his own grounds. [Rude v. St. Louis, 93 Mo. 408; Fairchild v. St. Louis, 97 Mo. 85; Canman v. St. Louis, 97 Mo. 92; Glasgow v. St. Louis, supra; Heinrich v. St. Louis, supra.] While some courts in other jurisdictions have held that the private right of access to the street appurtenant to abutting property includes the right to travel along the street to certain other places within limits that thus far have not been satisfactorily designated, this court has consistently adhered to the doctrine that the right of access is the only right appurtenant to private property which is not included within such broad control as has been conferred upon the city of St. Louis by the charter provision we have quoted. We do not decide and it is not necessary in this case to consider whether circumstances may not exist in which the right of access will be broader than the boundary lines upon the street of the private owner. In this case, however, no such question arises. The averment of the petition is that the ''embankment entirely obstructs travel along Aurora avenue *eastwardly* from plaintiff's property and there is no street or highway crossing or leading into Aurora avenue between the western line of plaintiff's property and the said embankment,'' whereby ''the easement incident to plaintiff's said tract of ground of the right to pass from same eastward to the public wharf and the river has been totally destroyed'' and plaintiff ''deprived of her property, to-wit, said easement, without due process of law, contrary to section 1 of the amendment 14 to the Constitution of the United States; and plaintiff's said property has been taken and damaged for public use and without compensation, contrary to section 21 of article 2 of the Constitution of Missouri,'' whereby the property has been greatly depreciated in value. It will be seen that the injury complained of

is that he cannot get eastward to the river and public wharf along Aurora avenue and that from the front of his property he must go westward to its west line to leave Aurora avenue and go to other parts of the city. There is no question that the street system of any locality has much to do with the availability of the real estate for many uses and consequently with its pecuniary value, but these are public questions and must be solved in the interest of the public. In opening streets to public travel the municipality assumes serious burdens respecting their maintenance in a safe condition, and in the interest of the general public that pays the bills should be clothed with a discretion commensurate with the responsibility. As we have already said, this is a doctrine to which this court has thus far adhered closely. Three of the cases we have cited, Rude v. St. Louis, Fairchild v. St. Louis and Canman v. St. Louis, grew out of a single circumstance very like the one now under consideration. In the construction of the Missouri Pacific Railway and Wabash, St. Louis and Pacific Railway east and west across High street and Jefferson avenue, two parallel streets running north and south in St. Louis, the railroad companies depressed their tracks at these streets so that they were rendered wholly impassable for teams. They were both improved highways. In the Rude case the plaintiff's lot, upon which were three buildings—two dwelling houses and a store—was about 500 feet north of the crossing. He sued the city and the companies for damages and recovered in the St. Louis Circuit Court, but the judgment was reversed here. The court, by Judge BLACK, said:

"Generally, where damages have been awarded to a property owner for an obstruction in the street, the obstruction has been in that part of the street upon which the property fronted; yet it cannot be said that this is always essential to a recovery. The property may not be on the street, yet may communicate with

it by means of a private way, in which event it would seem that an obstruction at the private way would be an infringement of a private right.  Now, in this case, the plaintiff has perfect access to his property. It is only when he goes south, passing Scott avenue and another street, that he comes in contact with the obstruction, the nuisance.  His inconvenience, and that of persons going to and from the grocery, is precisely the same in kind as that of all other persons who desire to use High street.  His may be greater in degree, but not different in kind.  The nuisance is a public one, and the physical facts show that the damages to the property are due to a public, and not to a private, wrong.  There can be no action for private damages due to a wrong, which, as to the plaintiff, is public only.''

Fairchild owned a lot with two dwelling houses fronting Jefferson avenue 315 feet south of the crossing of that street which had rendered it impassable. He recovered judgment in the circuit court which was reversed here on the ground stated by Judge BRACE for the court as follows: ''The only difference that can be pointed out is, that the property of the plaintiff in the Rude case was on High street, five hundred feet north of the obstruction on that street, and in this case the property of the plaintiffs is on Jefferson avenue, three hundred and fifty feet south of the obstruction on that street.  The ground of complaint is the same in each case, and in each case access to the public street to and from the owner's property and along it to the whole public street system of the city is unobstructed, though not so convenient perhaps as before this crossing was closed.  The inconvenience to every person traveling in a vehicle south of the railroad tracks, who desires to go north directly across them on this public street, and to every person north who desires to go directly on it south across them, of having to make a *detour* by some adjacent street where

crossings are provided, is the injury of which the plaintiff complains in each case. This is a common public injury for which damages cannot be recovered by an individual citizen, although such inconvenience to the public and to him may depreciate the value of his property. With the conclusion reached in that case, which must dominate this, we are satisfied."

Canman owned property on Jefferson avenue 125 feet north of the crossing, although the disturbance of the surface of the street extended to his lot. He also recovered judgment, which was reversed at the same time by this court, Judge Brace writing the opinion, and citing the Rude and Fairchild cases as controlling. These cases, which we are unable to distinguish from the one we are now considering, were decided several years ago, but we still remain of the same mind. In December, 1907, we expressly approved the same doctrine in Realty Co. v. Deere & Co., 208 Mo. 66, 87, in which after approving it as stated in the Glasgow case, supra, we said:

"In Knapp, Stout & Co. v. St. Louis, 153 Mo. l. c. 572, the principle and rule of law announced in the Glasgow case, as heretofore cited, was unqualifiedly approved, and Judge Gantt, in discussing the subject of the essential averments in cases of this character to entitle plaintiff to the relief sought, used this language: 'Moreover, to entitle plaintiff to relief as an adjoining proprietor it devolved upon it to allege and prove that it owned property fronting or abutting on the part of the street which the ordinance in question vacated. In a word, it must aver facts which show it will suffer a special or peculiar injury and not merely such inconvenience as is cast upon all other persons of that neighborhood,' citing in support Glasgow v. St. Louis, 107 Mo. l. c. 205; Van De Vere v. Kansas City, 107 Mo. 83; Rude v. St. Louis, 93 Mo. 408; Fairchild v. St. Louis, 97 Mo. 85.

"In Knapp, Stout & Co. v. St. Louis, 156 Mo. 343, the doctrine announced in the previous cases of Glasgow v. St. Louis, and Knapp, Stout & Co. v. St. Louis, 153 Mo. 560, that to entitle a plaintiff to injunctive relief it was necessary to allege that the property owned by the plaintiff fronted or abutted on a portion of the vacated street, was fully approved."

As this leads necessarily to the affirmance of the judgment of the trial court it is unnecessary to notice the other points discussed in the brief. We have examined with care the cases cited by the parties from other jurisdictions, and while some of them give color to the contention of the appellant, the great weight of authority is as we have stated, and is supported by the practically uniform adjudications of this court with which we are still satisfied.

The judgment of the circuit court is affirmed. *Blair, C.,* concurs.

PER CURIAM—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.