CITY OF CLAYTON, (PLAINTIFF), APPELLANT, v. PAUL R. NEMOURS, (DEFENDANT), RESPONDENT.—164 S. W. (2d) 935.

St. Louis Court of Appeals. Opinion filed Oct. 6, 1942.

Motion for rehearing overruled Oct. 20, 1942.

Petition for Writ of Certiorari denied by Supreme Court, Nov. 12, 1942.

168

*Glen Mohler* and *John P. Ossenfort, Jr.*, for appellant.

*Keil & Keil* and *Frank Coffman* for respondent.

BENNICK, C.—This case originated in the Police Court of the City of Clayton, Missouri, upon the filing of a complaint charging defendant, Paul R. Nemours, with the violation of Ordinance No. 647 of said city, in that on July 26, 1941, he had unlawfully parked his automobile in a no-parking zone on Glen Ridge Avenue, near its intersection with Clayton Road, in an area and at a point where parking was prohibited by the ordinance.

Convicted in police court, defendant appealed to the Circuit Court of St. Louis County, wherein, at the conclusion of all the evidence, the court, at defendant's request, peremptorily instructed the jury to return a verdict finding defendant not guilty. Plaintiff, City of Clayton, in due time filed its motion for a new trial; and this being overruled, judgment was entered discharging defendant in accordance with the directed verdict of the jury. The case reaches this court on plaintiff's appeal from such judgment in favor of defendant.

At the outset of the case we are confronted with defendant's motion to dismiss the appeal upon the ground that plaintiff city had no right of appeal from the judgment entered in defendant's favor in the Circuit Court of St. Louis County.

Defendant bases his contention almost entirely upon the assumed effect of two statutes, the one, Section 7140, R. S. Mo. 1939 (Mo. R. S. A., sec. 7140), and the other, Section 7363, R. S. Mo. 1939 (Mo. R. S. A., sec. 7363).

Section 7140, which is a part of the chapter and article relating to cities of the fourth class (of which the City of Clayton is one), provides that in all cases before the mayor or police judge arising under the ordinances of the city, an appeal may be taken by either the city or the defendant from the judgment of the mayor or police judge, except from judgments on a plea of guilty; that such an appeal shall be taken to the court having criminal jurisdiction, and shall be taken in the time and manner provided by the statutes in relation to appeals from judgments of justices of the peace in misdemeanor cases; and that upon such appeal, the appellate court shall proceed with the cause in the same manner as is provided in cases of appeals from judgments of justices of the peace in misdemeanor cases.

Section 7363, which is a part of the provisions made applicable to all cities and towns, provides that appeals from police courts and for violation of an ordinance of a city, town, or village shall be in

the nature of criminal appeals from judgments of justices of the peace.

From all such statutory provisions, which signify that in the case of an appeal from the judgment of a police court in a proceeding for violation of an ordinance the subsequent procedure in the circuit court must be in accordance with the criminal and not the civil code, defendant reasons that the city's right of appeal in the event of a judgment in favor of the defendant must likewise depend upon the criminal code, which, being silent upon the question (and the right of appeal being purely statutory), would denote, according to defendant's theory in the matter, that the city has no right of appeal from a judgment for the defendant in the circuit court.

While it is true that in the case of an appeal from the judgment of a police court the circuit court is required to follow criminal procedure just as though the case were before it on an appeal from the judgment of a justice of the peace upon the defendant's conviction of a misdemeanor (Noll v. Alexander [Mo. App.], 282 S. W. 739), this does not mean that the case itself becomes a criminal case in the circuit court so as to place the city in the same position as the State in so far as concerns its right to appeal from a judgment in favor of the defendant.

It has been taken as settled for years in this State that a prosecution for the violation of a city ordinance is a civil action (City of St. Louis v. Stubley [Mo. App.], 154 S. W. [2d] 407), although concededly resembling a criminal action in its effects and consequences. Regarding it with respect to both form and substance, it partakes of some of the features of each character of action, although its similitude to either is not complete. [Stevens v. Kansas City, 146 Mo. 460, 48 S. W. 658; City of St. Louis v. Ameln, 235 Mo. 669, 139 S. W. 429.]

In the sense that its primary object is to punish, a prosecution for the violation of a city ordinance is undoubtedly criminal in its purpose, but nevertheless civil in form, and especially so when regarded as an action for the recovery of a debt representing the amount of the fine or penalty imposed against the defendant for violation of the ordinance. Where the punishment prescribed by the ardinance may, in the first instance, be the imprisonment of the defendant, the conception of the action as one for the recovery of a debt will of course no longer obtain (City of St. Louis v. Von Hoffman, 312 Mo. 600, 280 S. W. 421), but even so the proceeding, though its sole object is to punish, is nevertheless not a proceeding to punish for the commission of a crime in the accurate legal sense of the term. This for the reason that a crime is an act committed in violation of public law, that is, a law coextensive with the boundaries of the State which enacts it, while an ordinance, on the contrary, is no more than a mere local police regulation passed in pursuance of and in subordination to the

general or public law for the preservation of peace and the promotion of good order in a particular locality. [Ex parte Hollwedell, 74 Mo. 395.; State v. Gustin, 152 Mo. 108, 53 S. W. 421.] In other words, where the defendant's act or omission is a crime, it is an offense against the public at large and punishable as such, but where it consists only in the violation of a municipal police regulation, it is merely an offense against the municipality, which the State does not undertake to punish, but permits the city itself to punish by a summary penal proceeding instituted in the city's own name and prosecuted in whatever municipal court may be constituted for the exercise of such limited jurisdiction.

But even though, for the reasons pointed out, a proceeding to enforce the penalty of an ordinance does not rise to the dignity of a criminal prosecution, it is nevertheless so closely related to a criminal case, and the consequences of a conviction are so nearly identical with those of a conviction of a crime, that the Legislature has wisely provided by the two statutes in question that an appeal from a police court shall be regarded as in the nature of a criminal appeal, and shall be proceeded with in the circuit court according to the rules of criminal procedure. However, as pointed out in King City v. Duncan, 238 Mo. 513, 142 S. W. 246, such a prosecution remains a civil case, which means that in determining the question of the substantive right of appeal, the matter is to be viewed from the standpoint of the rights in that respect which are accorded to the parties to an action under the civil code (Sec. 1184, R. S. Mo. 1939 [Mo. R. S. A., sec. 1184]).

So far as concerns the right of a municipality to appeal from a judgment in favor of the defendant in a proceeding for violation of an ordinance, the general rule would seem to be that the municipality has such right, if the proceeding is regarded as civil in its nature. [2 Am. Jur., Appeal and Error, sec. 228.] That such a proceeding is regarded as civil in our own State is well settled by the decisions; and consequently, when the defendant prevails in the circuit court, not only may the city move for a new trial for error allegedly committed against it (City of Carthage v. Bird, 146 Mo. App. 325, 129 S. W. 1054), but it may also appeal as in the case of any other party to a civil action who is aggrieved by the judgment in favor of his adversary. [City of St. Louis v. Bender, 248 Mo. 113, 154 S. W. 88; St. Charles v. Hackman, 133 Mo. 634, 34 S. W. 878; City of Springfield v. Starke, 93 Mo. App. 70.]

It follows from all that has been said that plaintiff's appeal was properly allowed in the instant case; and defendant's motion to dismiss the appeal must therefore be overruled.

Passing to the merits of the case, the ultimate question for decision is whether the court committed error in peremptorily directing a verdict in favor of defendant.

Glen Ridge Avenue, so far as its ownership and maintenance is concerned, is a private street in the City of Clayton, running north and south through Moorlands Addition, a restricted residential area, from Clayton Road on the south to Wydown Boulevard on the north.

By the original deed dated December 11, 1922, title to all the streets in the tract laid out and platted as Moorlands Addition was vested in three designated trustees and their survivors and successors, to hold the same as joint tenants for the exclusive use and enjoyment of the owners of the lots in the Addition and their heirs and assigns. The trustees were impressed with the duty of thereafter caring for and maintaining such streets, for which purpose they were empowered to levy assessments against the several lots in the Addition, with the assessments to be apportioned to and against the lots in a manner specified in the deed. Provision was made that upon the death of the last survivor of the three trustees originally designated in the deed, title to the streets should thereupon vest in the then owners of the lots located in the Addition, said title to be free of the trust, but subject to all the continuing easements, conditions, restrictions, covenants, and charges made applicable thereto and binding thereon. It was further provided, however, that upon the termination of the trust, the owners of the lots in the Addition might continue to perpetuate its object and intent with respect to the use and maintenance of the streets by choosing agents to act for them, whose powers and duties in that regard should be substantially the same as those of the original trustees. As a matter of fact, this very situation had come about; and at the time of defendant's arrest the control of the streets was reposed in three agents who had been duly chosen by the lotowners, as evidenced by an instrument prepared and filed of record on January 9, 1934.

Notwithstanding its private ownership, the evidence was undisputed that save for one week in the year when its north and south entrances are closed off alternately, Glen Ridge Avenue is not only permitted to be open for public traffic, but indeed is extensively used for such traffic, both by persons residing in the Addition, and also by those members of the general public who may desire and have occasion to make use of it as a thoroughfare between Clayton Road and Wydown Boulevard. It is in fact continually used for automobiles, trucks, and other vehicles, just as is true of all the other privately owned streets in the Addition as to which a similar license extends. Incidentally, the evidence shows that it was thus open at both ends for public travel at the time of defendant's arrest on the charge involved in this proceeding.

By ordinance No. 647, which is entitled "An Ordinance Regulating Traffic upon the Public Streets of the City of Clayton," it is made unlawful for any operator "to park any vehicle on any street or in any district lawfully designated by ordinance as a place where parking

is prohibited.'' A street or highway, within the contemplation of such ordinance, is defined as ''every way or place open for vehicular travel by the public, regardless of its legal status, and regardless of whether it has been legally established by constituted authority or by user for the statutory period of time as a public highway.'' For violation of the ordinance or of any rule or regulation of the Street Commissioner pursuant thereto, a penalty is provided in the form of a fine of $1 to $100, imprisonment not to exceed 90 days, or both such fine and imprisonment. A subsequent ordinance (Ordinance No. 1056), which is to be read along and in conjunction with Ordinance No. 647, directs the Street Commissioner to erect standard traffic signs prohibiting the stopping, standing, or parking of any vehicle ''on both sides of Glen Ridge between Clayton Road and a point 115 feet north of Clayton Road.''

Not only did the ordinance impose such restriction on parking for a distance of 115 feet to the north of Clayton Road on either side of Glen Ridge Avenue, but in order to establish effective traffic control the city also erected an electric stop-and-go signal at the point of the intersection, whereby the flow of traffic into and out of Glen Ridge Avenue is automatically controlled. Lines or markers have been painted upon the surface of the street dividing the whole of the 26 feet of the paved width of Glen Ridge Avenue into three traffic lanes, in the center one of which there has been placed a metal pad, contact with which by the wheel of an automobile causes the red lights of the electric signal to stop traffic on Clayton Road, and permits the making of a left turn from off of Glen Ridge Avenue into Clayton Road. The east lane is used by vehicles which may at all times make a right turn from Clayton Road into Glen Ridge Avenue, while the west lane permits a right turn at all times from Glen Ridge Avenue into Clayton Road.

Defendant resides, as a member of the family, in the home of his mother which is located on the northeast corner of Glen Ridge Avenue and Clayton Road. The house faces on Clayton Road; and the area in which parking is prohibited on Glen Ridge Avenue extends to the rear along the west side of the lot to a point within a few feet of the driveway which leads into the garage.

It was an admitted fact that at the time of his arrest defendant's automobile was parked in the no-parking zone on the east side of Glen Ridge Avenue alongside his mother's property. A conviction followed in police court, but upon his appeal to the circuit court he was discharged in accordance with a directed verdict which was returned at the close of all the evidence. As already indicated, the case comes to this court on the city's appeal from such judgment of acquittal in the circuit court.

The character of the ownership of Glen Ridge Avenue being what it is, defendant poses the question before the court as being one of

whether plaintiff city has the power to prohibit the parking of an automobile on a private street located within its geographical limits. This, however, represents only a partial view of the situation, and patently omits all reference to the material and modifying features of the evidence upon which the result in the case depends. If the question, in the abstract, were merely one of whether the city might prohibit parking on private property, the answer would undoubtedly be in the negative (Ex parte Corvey, 220 Mo. App. 602, 287 S. W. 879), to say nothing of the fact that the city, by its ordinance, has undertaken no such thing. On the contrary, the ordinance which defendant is charged with having violated is, by its title, an ordinance purporting to regulate traffic upon the public streets of the City of Clayton, so that the question presented is whether, under the undisputed facts of the case, Glen Ridge Avenue may be said to be a public street within the contemplation of the ordinance. If so, it is obviously because of the use to which it is applied; and the actual question, therefore, is whether the regulatory or police power of the city may be extended over Glen Ridge Avenue, notwithstanding its private ownership and maintenance, in view of the fact that by the permission and invitation of its owners, it is devoted to public use, and is extensively used by the general public in accordance with the license granted.

Every citizen holds his property subject to the valid exercise of the police power, and in the event of a conflict between his individual interests and those of society as a whole, he must subordinate his private rights to a reasonable and proper exercise of the police power for the promotion and furtherance of what is conceived to be the general welfare. So it is that the State, when fulfilling its duty of protecting the lives and property of persons while upon or using the roads of the State, may extend its supervision to roads not duly constituted public highways if commonly used for public travel (Phillips v. Henson, 326 Mo. 282, 30 S. W. [2d] 1065); and so likewise may a city, in the exercise of the power delegated to it by the State, regulate the use of vehicles or other means of transportation upon all streets and roadways which are rightfully made use of by the public within its municipal limits, regardless of their legal *status*. It is the public use to which a street is put that gives rise to the city's right and duty to regulate the flow of traffic upon it; and if the situation is such that a street is permitted to be made use of for the pleasure and convenience of the public at large, the character of its ownership is immaterial upon the question of its being subject to control and regulation by proper city ordinances. [Crossler v. Safeway Stores, Inc., 51 Idaho, 413, 6 Pac. (2d) 151.]

As an adjective, the word ''public'' has a dual meaning, depending upon the sense in which it is employed. In one sense it may be employed to describe the character in which a thing is held, while in an-

other and equally proper sense it may denote the use to which the thing is put. [50 C. J. 845.]

In the latter sense of the term there seems to be no escaping the conclusion· that Glen Ridge Avenue is a public street insofar as concerns the question of the right of plaintiff city to control and regulate the use and operation of motor vehicles upon it. This solely for the reasons that by the sufferance and permission of its owners it has been allowed to become a way or place open for vehicular travel by the public, or, in other words, a *de facto* street, to all practical intents and purposes amounting to a public highway just as in the case of the legally constituted public streets and alleys within the municipality. [Crossler v. Safeway Stores, Inc., *supra.*]

Nor does this conclusion in any way entrench or encroach upon the rights of private property, or serve to confer upon the city any title to the street. Concededly the owners of Glen Ridge Avenue may exclude the public from it at any time they wish. The license heretofore granted to the general public to use the street will continue only so long as it may suit the convenience of those whose power *it is to grant or to deny the license.* But so long as the owners of the street, by sufferance or permission, do allow the street to be used by the general public in the manner which the evidence discloses, the necessity for regulation will exist in no less degree than would be the case if the street were publicly owned and maintained; and the city, during all such time, may prescribe reasonable rules by which the privilege thus extended may be enjoyed by all members of the general public, including the owners of the street and the proper members of their families, who must likewise conform to the regulations thus imposed. [Commonwealth v. Gammons, 40 Mass. (23 Pick.) 201.]

It follows from all that has been said that the circuit court was in error in peremptorily directing a verdict for defendant, and the judgment of the circuit court must therefore be reversed and the cause remanded. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Respondent's motion to dismiss the appeal is overruled, and the judgment of the circuit court reversed and the cause remanded. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.

ON MOTION FOR REHEARING.

BENNICK, C.—Defendant (respondent) has filed a motion for rehearing in which he earnestly insists that in overruling his motion to dismiss plaintiff city's appeal, thereby upholding the right of a municipality to appeal from a judgment in favor of the defendant

in the case of a prosecution for violation of an ordinance, we have brought ourselves into conflict with the two statutes referred to in the principal opinion (Secs. 7140, 7363, R. S. Mo. 1939, Mo. R. S. A., secs. 7140, 7363), and have reached a result which is counter to the obvious purpose of the statutes.

We cannot agree with defendant that our decision on his motion to dismiss is either in conflict with the statutes or violative of their obvious purpose, which, in view of the recognized criminal aspects of a civil proceeding for violation of a city ordinance, was merely to set at rest, by positive legislative enactment, the uncertainty prevailing as to the proper procedure to be followed in the trial of appeals from city courts.

All that such statutes purport to do is to provide that such an appeal shall be "in the nature" of a criminal appeal in the sense that its trial shall be proceeded with in the same manner as is provided in cases of appeals from judgments of justices of the peace in cases of misdemeanor. But while thus providing that the criminal, and not the civil, code shall govern the procedure to be followed on the appeal, the statutes do not in anywise undertake to alter the character of such a proceeding as inherently civil in its nature, nor do they deny the subsequent right of appeal which the civil character of the proceeding affords equally to either of the parties to it who may be aggrieved by the judgment of the circuit court. Indeed, insofar as the statutes may be thought to indicate a legislative purpose or policy in that respect, it is inconceivable that in specifically providing that either the city or the defendant may appeal from the judgment of the city court (Sec. 7140), the Legislature should at the same time have intended that at the conclusion of the trial in the circuit court, the defendant alone, and not the city, should have the right of further appeal.

As for matters having to do with the merits of the case, that is, with the question of the validity of the ordinance prohibiting the parking of automobiles along Glen Ridge Avenue for a distance of 115 feet north of Clayton Road, defendant complains of our decision insofar as it constitutes an effectual holding that the city, as an incident to its power to "regulate" the parking of vehicles on streets (Sec. 8395, R. S. Mo. 1939, Mo. R. S. A., sec. 8395), may absolutely "prohibit" the parking of automobiles at the point and within the limits prescribed by the ordinance.

For his assumed authority, defendant cites the case of Baker v. Hasler, 218 Mo. App. 1, 274 S. W. 1095, which involved the validity of an ordinance of the City of Caruthersville, Missouri, providing that it should be unlawful for any person, firm, company, or corporation engaged in operating any automobile or jitney bus for the purpose of carrying passengers for hire to allow any such automobile or jitney bus to be or remain stationary or parked on any public street or

alley within the corporate limits of said city, except for a reasonably sufficient length of time to permit passengers to enter or alight from such automobile or jitney bus.

Asserting the power of the courts to declare an ordinance void if the same appears or is shown to be unreasonable, the court held the particular ordinance to be invalid upon the obvious ground that its sweeping declaration prohibiting the stopping or parking, upon any public street or alley within the entire corporate limits of the city, of the one special type of motor vehicles for any purpose outside of the one exception noted, was oppressive, in contravention of common right, and therefore unreasonable.

The above decision was eminently sound and just on its particular facts, but it constitutes no authority for the proposition that a city may not, as a reasonable police regulation, designate streets or parts of streets within its limits upon which parking shall be either prohibited absolutely or else restricted to a limited time. On the contrary, a city, under its power to regulate parking, may define and establish zones where parking shall be either limited or prohibited (Cavanaugh v. Gerk, 313 Mo. 375, 280 S. W. 51); and so long as the ordinance is reasonable and necessary for the pubilc safety, the courts will have no recourse but to enforce it, if no other obstacle to its validity exists. Incidentally, in the case at bar, defendant has never contended that the ordinance in question is unreasonable or unnecessary for the public safety; and that the ordinance constitutes a proper police regulation may therefore be taken for granted, if the city's power to regulate the use and operation of automobiles extends to Glen Ridge Avenue.

As in the original submission of the case, the burden of defendant's complaint is that the effect of the ordinance denying him (in common with every one else) the right to park on Glen Ridge Avenue for the distance of 115 feet adjacent to his mother's residence, where he resides as a member of her family, is to take private property for public use without just compensation. The answer to this contention is that the city has not taken any private property for public use or otherwise. On the contrary, the owners themselves have voluntarily extended permission to the general public to use Glen Ridge Avenue for public travel in the manner and to the extent that the evidence discloses; and it is the fact of the license thus granted by the owners which casts upon the city both the power and the duty of imposing reasonable regulations upon the exercise of such license so long as the owners allow the same to be continued. To be sure, the revocation of the license, if the owners should so elect, would not work an actual repeal of the ordinance, although the practical effect would be the same by removing the sole basis upon which the ordinance depends for its validity.

181

It follows that respondent's motion for rehearing should be overruled; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Respondent's motion for rehearing is, accordingly, overruled. *Hughes, P. J., and McCullen* and *Anderson, JJ.,* concur.