ALANDA NEMOURS, Appellant, v. J. F. HICKEY, T. J. HARGADON and GUS M. BISTON, Individually and as Agents of MOORLANDS ADDITION.—No. 39955.—210 S. W. (2d) 94.

Court en Banc, March 8, 1948.

Rehearing Denied, April 12, 1948.

*J. L. London* and *Frank Coffman* for appellant.

732

*Kenneth Thies, Barksdale, Abbott & Thies* and *Robert C. Powell* for respondents.

[95] CLARK, J.—The subject matter of this suit has been the source of litigation which has several times reached the appellate courts of this State.

Appellant is the owner of a lot with her residence thereon in Moorlands Addition, a private subdivision in the City of Clayton. Respondents are agents selected by the real estate owners to carry out the provisions of an indenture regulating the control and care of the private streets within the addition.

The suit is to declare void a certain "easement" in Glen Ridge Avenue granted by respondents to the City of Clayton; to enjoin respondents from continuing to keep said avenue open to the public, and for other specified relief. The circuit court declared the easement void, denied all other relief prayed for and assessed the costs against plaintiff.

A plat of Moorlands Addition was recorded in 1923. About the same time the owner executed a lengthy indenture containing certain covenants and restrictions as to buildings, streets, etc., binding on all lot purchasers and their successors in title. It conveyed the title to all streets to three named trustees as joint tenants and vested them with certain powers among which were: to maintain the streets and sidewalks in good condition and free of obstruction so that lot owners and their families should have free access thereto as places of passage, subject to such reasonable rules as the lot owners may from time to time prescribe; and to levy assessments against lot owners to pay for maintaining the streets. The indenture provided that upon the death of the last surviving trustee the title to the streets and sidewalks should vest in the then lot owners and their successors in title as tenants in common, subject to the covenants, conditions and restrictions contained in the instrument; and that the lot owners might select agents to carry out the provisions of the indenture, as agents but not as trustees. In December, 1933, the last surviving trustee having died, respondents were selected as agents at a meeting of the lot owners.

Moorlands Addition is bounded on the north by Wydown Boulevard and on the south by Clayton Road, both heavily traveled public streets. Within the addition are three north and south private

streets connecting Wydown and Clayton Road, Westwood Drive being on the west edge, Audubon Drive on the east edge and Glen Ridge Avenue in the middle of the addition. Several east and west private streets run from Westwood to Audubon, crossing Glen Ridge. A number of large apartment houses are located in the western part of the addition. In 1929 a public school was established on Glen Ridge about midway between Wydown and Clayton Road, serving pupils from within and without the addition. The rest of the addition is restricted to family residences. The population [96] of the addition is about five thousand. In 1935 appellant bought her lot and built her residence. The lot is on the northeast corner of Clayton Road and Glen Ridge and the residence faces Clayton Road. Appellant's adult son, Dr. Nemours, resides with her.

Since 1932 during May of each year the agents close off Glen Ridge, Audubon and Westwood, alternately, for two weeks. Before that time the closing off was at irregular intervals. This is done to prevent the streets from losing their private character by continuous public user. The streets were managed in substantially the same way when appellant bought her property and at all times before and since.

In December, 1939, respondents executed an instrument reciting that a traffic hazard exists on Glen Ridge, a private street, at and near its intersection with Clayton Road, a public street; that a system of automatic traffic signals is necessary at that place and the City of Clayton has been asked to provide same. Then the instrument purports to grant the city the right to install such a system, placing the necessary cables and appurtenances in or under the southern end of Glen Ridge, and to maintain and operate the system perpetually as the property of the city.

Thereafter the city caused lines to be painted in the southern part of Glen Ridge, indicating that the street is divided into three lanes. In the center lane was placed a traffic pad connected by underground wires with signal lights in Clayton Road, so that contact with the pad signals east and west traffic in Clayton Road to stop and permit a left turn into it from Glen Ridge. The east lane was marked for right turn into Glen Ridge and the west lane for right turn into Clayton Road. The city also placed a sign on the east side of Glen Ridge one hundred fifteen feet north of Clayton Road indicating "No Parking" south of the sign. The city enacted ordinances providing for the installation of the signal system and the "No Parking" signs.

We now briefly review previous appellate decisions relating to the subject matter of this controversy.

*Clayton v. Nemours, 237 Mo. App. 167, 164 S. W. (2d) 935.* In July, 1941, Dr. Nemours was convicted in police court for illegally parking his automobile in the "No Parking" zone on Glen Ridge. On appeal the circuit court peremptorily instructed the jury to acquit him.

The St. Louis Court of Appeals reversed and remanded the case, holding that, in the interest of safety, the city was within its power in enacting ordinances to regulate traffic on a private street used by the public with permission of its owners.

*Nemours v. Clayton*, 237 Mo. App. 497, 175 S. W. (2d) 60. Mrs. Nemours and Dr. Nemours, her son, sued to enjoin the city from maintaining the signal system and traffic regulations above mentioned. They lost their suit both in the circuit court and the court of appeals. The latter court again holding the city had power to regulate traffic on private streets used by the public; that the rights of abutting owners are subject to reasonable limitation for the public good and that such limitation does not amount to an illegal taking of private property.

*Hickey v. Danna*, 238 Mo. App. 839, 178 S. W. (2d) 764. The agents of the lot owners in Moorlands Addition sought to enjoin the defendants from carrying on their business as peddlers as being a violation of the restrictive covenant that "no business shall be carried on . . . in said tract of land." The court of appeals said that defendants were not parties to the covenant; they were carrying on their business at the solicitation of residents of the addition; no signs were posted forbidding such business, and the private streets were used by merchants generally to deliver their wares to the residents. Injunction was denied.

In *Clayton v. Nemours*, 353 Mo. 61, 182 S. W. (2d) 57, Division Two of this Court affirmed judgments imposing fines upon Mrs. Nemours and her son, Dr. Nemours, for parking their cars in the "No Parking" zone on Glen Ridge Avenue. We held that Glen Ridge, although a private street, had been devoted to public use to such extent as to become a de facto public street subject [97] to reasonable municipal police regulations.

The first point made by appellant is that "In violating the restrictions and covenants . . . defendants unlawfully appropriated property belonging to plaintiff."

That raises a question of fact as to whether such covenants and restrictions have been violated. That we will discuss later.

Her second point is that each lot owner is vested with "A property right, an easement in and to each and every lot."

If appellant means that *each* owner has a property right *in all the private streets*, we agree.

Her third point is that "An easement is a property right which can only be taken for public purposes by condemnation . . . after payment of just compensation."

It is unnecessary to review the cases cited by appellant in support of her points. We agree with the statements of law which they contain as applied to the facts which they consider.

736

In February, 1943, appellant caused to be served on respondents a paper which, after reciting general charges that respondents had failed to comply with the terms of the indenture, made specific demand that respondents "(1) take immediate and effective steps to close said streets to the public generally thus maintaining their status as private streets, as suggested by the court of appeals in said decision," [237 Mo. App. 167, 164 S. W. (2d) 935] and (2) immediately retract and recall the easement given to the city to install the signal system. Dr. Nemours testified and appellant's brief reiterates that those were appellant's demands at the trial. Dr. Nemours further testified that placing the "No Parking" sign in Glen Ridge was "the straw that broke the camel's back."

The suggestion referred to in the decision of the court of appeals is: "Concededly the owners of Glen Ridge Avenue may exclude the public from it any time they wish." The "owners" of Glen Ridge and all the other streets in the addition are all the lot owners. It may be that the lot owners, by a majority vote, can permanently exclude the public from Glen Ridge. However, since they have for nineteen years permitted the maintenance of a public school on Glen Ridge, serving more than four hundred pupils from within and without the addition, there may be a doubt that even a majority of the lot owners can exclude the public from the entire street. Be that as it may, a majority of the lot owners have never evidenced a desire to permanently exclude the public from Glen Ridge; nor have they clothed their agents with that power, or vested appellant or any single lot owner with authority to compel the agents to take such action. If appellant can force the closing of Glen Ridge, others can force the closing of the other streets.

Certain it is that a large portion of the public must have access to the addition at all times. Moorlands is not a small private residence area occupied by only a few families. It resembles a small city with five thousand inhabitants. Even Dr. Nemours testified that he did not request the agents to close Glen Ridge permanently "because that would have excluded my friends from visiting me if they wanted to." Other lot owners may have friends who desire to visit them, or friends outside the addition whom they would like to visit. Then there are policemen, firemen, meter readers, employees, doctors, merchants, teachers, school children and others, constituting a large and indefinite section of the public, who must have access to the addition. Otherwise all the lot owners will suffer irreparable damage.

Respondents have power, which they have been exercising, to close the private streets, alternately, for short periods to all traffic, but we fail to see how they can successfully discriminate between those who have and those who have not the right to use the streets when they are open.

█ The circuit held void the instrument executed by respondents purporting to grant a perpetual easement to the city to maintain a traffic pad on the surface and wires under the surface of Glen Ridge. We think respondents were without authority to grant a *perpetual* easement, but are authorized to maintain some such system themselves or to permit the city to [98] do so as long as the street is open to traffic. Clayton Road is one of the most traveled highways in Missouri. At least one Federal highway is routed over it and a short distance east of Glen Ridge it connects with the Express Highway leading to the main business section of St. Louis. Without some traffic control system it is difficult and dangerous to get from Glen Ridge into Clayton Road. The testimony, including that of Dr. Nemours, shows that the present system is a convenience for that purpose.

█ The "No Parking" sign was placed at the side of appellant's lot by the City of Clayton which is not a party to this suit. We find nothing in the record to show that respondents gave permission for the sign; although, under their duty to keep the street free from obstruction, they would have been within their rights had they done so. Glen Ridge is about twenty-four feet wide between curbs. With an automobile parked on the east side of the street it would be dangerous, and with automobiles parked on both sides it would be impossible, for a vehicle to turn into Glen Ridge from Clayton Road.

Parking is prohibited on the south side of Clayton Road from Glen Ridge to a point fifty feet east, leaving appellant about thirty feet of parking space in front of her house. She has a driveway from Glen Ridge to her garage.

█ The constitutional question raised by appellant, to wit, that the actions of respondents have appropriated her property [easement in the street] to public purposes without payment of compensation, has been largely answered by a recital of the facts. The fee in all the streets in the addition is owned by all the lot owners as tenants in common. In addition to her undivided interest in the fee, appellant as an abutting owner has an easement [right of access] in Glen Ridge so long as it is used for street purposes. But the primary purpose of streets, either public or private, is to afford passage and an abutting owner has no constitutional right to unreasonably obstruct passage by parking vehicles in the street. [Nemours v. Clayton, 237 Mo. App. 497, 175 S. W. (2d) 60; Clayton v. Nemours, 353 Mo. 61, 182 S. W. (2d) 57, and cases cited.] We judicially note that parking on public streets in cities is commonly limited or forbidden at places where traffic needs make the same advisable. The evidence above mentioned shows that parking on Glen Ridge adjacent to appellant's property would obstruct and endanger those who use the street.

Appellant's contention that her easement of access has been appropriated or destroyed is based upon the fact that she must drive

upon a painted traffic line to get in or out of her driveway. We know of no law or ordinance forbidding her to do so.

Under the facts as shown by the evidence no legal right of appellant has been violated and the judgment must be and is affirmed. All concur.