STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Appellant,

v.

Mildred A. JOHNSON et al., on Exceptions
to the Award of Mildred A. Johnson, Law-
rence Sippy, Nevin Sippy, Sinclair Refin-
ing Company, Clara Kinsman, Helen Al-
lier, Eddie Allier, George Shields and
Maude Shields, Respondents.

No. 44752.

Supreme Court of Missouri.

Division No. 1.

March 12, 1956.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for appellant.

Earl G. Smith, Earl Q. Smith, St. Louis, for respondent Mildred A. Johnson.

Julius H. Berg, St. Louis, for respondents Lawrence Sippy and Nevin Sippy.

Fordyce, Mayne, Hartman, Renard & Stribling, by Thomas Rowe Schwarz, St. Louis, for respondent Sinclair Refining Co.

HYDE, Judge.

This is a condemnation case in which commissioners awarded respondents $18,500 and both parties filed exceptions. Respondents had verdict and judgment for $28,800 from which the Highway Commission has appealed. We have jurisdiction because of the amount in controversy is more than $7,500. State ex rel. State Highway Comm. v. Goodson, Mo.Sup., 281 S.W.2d 858.

Appellant alleges error in rulings on evidence, comments by the Court and conduct of counsel. Appellant also contends that the verdict was the result of mistake and misunderstanding and was not supported by substantial evidence. Respondents' property was taken for widening of U. S. Highway 40 built on St. Charles Rock Road. It was located at the northwest corner of the intersection of the Highway and Carson Road which intersected at an angle less than a right angle on that side. The property consisted of two lots; on lot 1, there was a two story brick building with two store rooms on the first floor and two five room apartments on the second floor; on lot 2, there was a filling station with a work shop behind it. The entire property had a front on St. Charles Rock Road of 214′ 11″, on Carson Road 196′ 11½″ and a back length of 105′ ⅜″. The depth on the west side was 165′. The brick building was on the property in 1929 when respondent Johnson's father purchased the lots, but the other buildings were built after that time. All of the land upon which the brick building was located was taken and also a strip off the front of the rest of the property 17 feet wide. The principal difference in valuation and damages made by the witnesses for each side was due to the difference in the estimates of the value of the building. This is shown by the following summary of the testimony concerning valuation and damages:

| Respondent's Witness | Value Before | Value After | Value Bldg. Taken | Value Land Taken | Total Damage |
|---|---|---|---|---|---|
| Hendricks | $53,098.00 | $24,764.00 | $23,148.00 | $ 5,186.00 | $28,334.00 |
| Wuest | 63,000.00 | 22,000.00 | 24,337.50 | 16,660.00 | 40,997.50 |
| Surkamp | 49,500.00 | 16,814.00 | 22,000.00 | 10,686.00 | 32,686.00 |
| Appellant's Witness | | | | | |
| Bernard | 32,000.00 | 18,200.00 | 7,200.00 | No testimony | 10,900.00 |
| (Bernard damage to filling station, pumps, island, etc.) | | | | 2,100.00 | |
| (Bernard special benefit) | | 3,000.00 | | | |

■ The contention that the verdict was not supported by substantial evidence is obviously without merit. Disregarding the challenged testimony of Mr. Wuest, the testimony of Mr. Hendricks and Mr. Surkamp was substantial evidence. Both were long-time residents of the area, familiar with the property and with many years of experience in the real estate business. Their qualifications as to valuations were amply shown and the method they used in determining damages (as shown by the summary herein above set out) was proper. Appellant points out certain matters stated by them in making valuations, such as Hendricks' statements that strip taken depreciated the value of the land alone by one-fifth and that it was a greater damage to

take a strip off the front than off the back; and Surkamp's valuation of the land at $100 a front foot all the way across even though the depth was less on the east part than on the west part. However, the weight of this testimony and the explanations and reasons of these witnesses for these views were for the jury. We hold there was substantial evidence to support the verdict.

■ The principal questions concerning the admission of evidence were in connection with the testimony of Mr. Wuest. Appellant says it was error to permit him to testify concerning the purchase price of the building, the concrete median strip in the highway and the traffic lights at the Carson Road intersection. Appellant also says Wuest's entire testimony as to value and damages should have been stricken because it was based on improper elements. Wuest said that the father of respondent Johnson bought the property in 1929 for $25,000. Appellant says this was too remote, citing City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149; State ex rel. State Highway Comm. v. Pope, 228 Mo.App. 888, 74 S.W.2d 265; State ex rel. Highway Comm. v. Malone, Mo.App., 45 S.W.2d 84. The Pope and Malone cases held it was improper to admit evidence of the purchase price when the value of the land had depreciated since the purchase. In the Paramount Shoe case, in which there was no such showing, it was held that the purchase price was properly considered. Since the evidence here was that property values in the area had increased since 1929, and since the witnesses of both parties valued the property before it was taken at more than $25,000, we hold there was no error in permitting the 1929 purchase price to be stated.

■ Concerning the concrete median strip which separated the east and west lanes of the new highway, it was shown by Wuest (and other witnesses) that this was a sufficient barrier to prevent eastbound vehicles from making a left turn into the filling station on the property. Appellant cites cases holding that no rights accrue to landowners for obstruction of a street

which does not prevent access to their property, such as Gorman v. Chicago, B & Q R. Co., 255 Mo. 483, 164 S.W. 509; Nemours v. Hickey, 357 Mo. 731, 210 S.W.2d 94; Christy v. Chicago, B & Q Ry. Co., 240 Mo.App. 632, 212 S.W.2d 476; State v. Hoblitt, 87 Mont. 403, 288 P. 181. Appellant says if the median strip (and traffic lights hereinafter discussed) "had been installed or constructed after the condemnation suit had terminated and after the original construction of the highway, respondents could not prevent their installation or construction, nor could they collect damages for them." Therefore, appellant says respondents "should not be entitled to fortify their claim for damages in the condemnation suit because of those items." However, appellant was claiming special benefits to this property to offset damages, which benefits its witness said were due to improvement in its adaption for use as a large filling station with better visibility from the east and greater inducement for people to travel it because of the kind of construction used. Since increased traffic was one of the factors appellant was claiming as a basis for special benefits for filling station use, we think there was no error in permitting a showing on this issue of what the entire construction was and how it would tend to prevent part of the traffic from using such a filling station on this property. (However, see discussion in the Pope case, supra, 74 S.W.2d loc. cit. 269, concerning increased traffic as special benefits.) While appellant would have been entitled to an instruction limiting consideration of this evidence to the issue of special benefits, it did not ask to have this evidence so limited. We, therefore, hold that, under these circumstances, there was no error in admitting the evidence about the median strip as a permanent part of the highway construction.

■ The admission of the evidence concerning the traffic lights at the Carson Road intersection is a more serious matter because it went beyond the matter of special benefits. On direct examination, Wuest was asked if in his opinion these signals affected the value of the remaining tract

of the land and he said it did. Appellant's overruled objection to this question was "on the grounds that it is not material, as to traffic regulatory signs placed on the highways, as to the market value of the adjacent property." On cross-examination the following occurred: "Q. When you appraised the property after the construction of the highway, did you take into consideration, in estimating the value of that property remaining, the traffic signals which were installed at the intersection of Carson Road and St. Charles Rock Road? A. Well, it cut the value of the property. Q. Did you take those into consideration? A. I did. Mr. Ring: Your Honor, I move that the testimony of this witness be stricken, that the jury be instructed to disregard it, on the grounds that the witness has based his testimony upon improper elements of damage, he has based it upon the—partly upon the purchase price of this property in 1929, he has based a part of it upon the contemplation of the highway prior to its improvement, he has based a part of his testimony upon the installation of traffic signals at the intersection of Carson Road and St. Charles Rock Road, all of which are improper elements of damage." (The second matter referred to is not mentioned in appellant's brief.) After further examination of Wuest, both cross and redirect, indicating that Wuest considered these traffic lights an element of damage, this motion to strike was renewed and again overruled.

Appellant's motion to strike out all of Wuest's testimony was too broad. (For a case in which it was proper to strike out all of the testimony of a witness, see State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 230 S.W.2d 850.) We discussed this matter in Texas-Empire Pipe Line v. Stewart, 331 Mo. 525, 55 S.W.2d 283, 285, where it was claimed that many of the stated causes of depreciation of the land involved by defendant's witnesses therein "were so remote and speculative as to be incapable of ascertainment by the jury." It was also claimed "that, because the witnesses could not separately value the stated causes of depreciation, the competent and incompetent evidence was commingled and rendered all of the testimony of the witnesses of no value." We held that it was not error to overrule the motion to strike, saying: "The objection assumed that the stated causes of depreciation were in evidence as independent items of actual damages, and that defendants were seeking compensation for such damages. The record does not sustain the assumption. On the contrary, defendants were seeking compensation for depreciation of the market value of the farm as a whole. The cross-examination disclosed that the opinions of the witnesses on depreciation rested in some measure on remote and speculative damages, so called. This did not destroy the testimony of the witnesses, but tended to discredit the opinions on depreciation, and was for the consideration of the jury in determining the weight to be given the testimony."

In this case, appellant did not attempt by cross-examination to have the witness separately state any estimate of the amount of depreciation in value due to the traffic lights, so we are left without any information as to whether it could have been a substantial amount. Moreover, Wuest's estimate of damages (and that of the other two witnesses) was based on his valuation of the land before it was taken and after the taking. (The jury was instructed that this was the proper measure of damages.) The amount of damages was calculated by all of them (as shown by the summary supra) by adding the value of the building taken to the value of the land actually taken. Thus, no damages to the remaining land was considered but the value of the land after the taking was fixed by deducting this valuation of what was actually taken from the estimated value of the entire property before the taking. Therefore, it appears in arriving at these figures no amount of damages from other causes could have been included. Furthermore, the jury did not accept Wuest's estimates (which were the highest of any witness) because they fixed the damages more than $12,000 under his figures; the amount allowed being between the estimates of respondents'

other two witnesses. In view of all these considerations, we hold that there could have been no prejudicial error in the court's rulings on these matters.

■ Appellant also alleges error in allowing respondents to introduce evidence concerning the removal of gasoline pumps from the part of the property appropriated for right of way, citing cases holding that damage to personal property or the cost of removing it cannot be recovered in condemnation, such as Springfield, Southwestern Ry. Co. v. Schweitzer, 173 Mo.App. 650, 158 S. W. 1058; and City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 266 Mo. 694, 182 S.W. 750, L.R.A.1916D, 713. Appellant concedes that there was no evidence before the jury as to this cost but says the jury was led to believe this was an item of damage to be considered, because of testimony about the right and necessity of removing the pumps. An exhibit concerning the cost of removal was offered but was withdrawn. In view of the testimony of respondents' witnesses as to the damages, limited to value of the land and building actually taken, and the instructions on the measure of damages (the only instructions given as to this matter were those offered by appellant), we cannot hold there was any prejudicial error in the Court's rulings with respect to this evidence. See State ex rel. State Highway Commission v. Young, 324 Mo. 277, 23 S.W.2d 130, 134. Furthermore, appellant's own witness on damages testified on direct examination to an item of $2,100 as "damage to a filling station by reason of having to rearrange its facilities, its pumps and pump islands, lights and water line and so forth." (See summary, supra.) Apparently, this testimony went beyond that of respondents. We, therefore, overrule this contention.

■ Appellant further alleges error in refusing to allow it to show that respondents could have access to the remaining property across the area taken for sight distance. This referred to a triangular strip at the Carson Road intersection which appellant's right-of-way agent, Mr Mauer, said was acquired "to permit a proper radius turn for traffic movement at the intersection and also to maintain sight distance at that intersection." Mr. Mauer also said the State had exactly the same kind of easement on this strip as over the paved portion of the highway. There was evidence that the State had built barricades on this corner strip, which apparently limited access into the filling station through that area. Mauer, as appellant's witness, was asked if the fact that the barricade was there would prevent the application for a permit for a driveway at that point to the State Highway Commission. Objection was sustained on the grounds that this was immaterial and that Mauer was not the one who issued the permits. Appellant then made an offer of proof to show by Mauer that the presence of the guardrail would not prevent the use of that highway area as an entrance and that the barricade was placed there solely to prevent parking or other obstructions to view around the angle or radius of the intersection. This offer of proof was refused. Considering the question and the offer of proof together, apparently a conclusion or prediction of the witness was called for as to what the highway Commission would do concerning an application for a driveway through the barricade, which, of course, would not be binding in any way on the Commission. Furthermore, as we said in Shell Pipe Line Corp. v. Woolfolk, 331 Mo. 410, 53 S.W.2d 917, 918: "'The probability that the appropriator will not exercise, or the fact that there is no present intention of exercising, to the full extent the rights acquired should not be considered in reduction of the damages, where there is nothing to prevent a full exercise of such rights, since the presumption is that the appropriator will exercise his rights and use and enjoy the property taken to the full extent.'" We hold there was no error in the Court's ruling on this offer of proof.

Other allegations of error made by appellant are that the necessity for constant objections to improper questions of respondents' counsel caused the jury to be biased and prejudiced against appellant; and that the Court's conduct and comments

influenced the jury against appellant. We have carefully considered the entire record and find no merit in these contentions.

The judgment is affirmed.

All concur.